The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dillard and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
This case was originally heard by Deputy Commissioner Dillard in Lincolnton, North Carolina, on 20 October 1994. Subsequent to the hearing, the parties took the testimony of Dr. Ronald Digby and Dr. Henry Thomason by deposition. The transcripts of the depositions are incorporated into the record of this hearing. The parties also submitted their contentions
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employing three or more employees at all times pertinent hereto.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The compensation carrier on the risk is CIGNA Insurance Company.
4. The deceased's weekly wage was $380.00, yielding a compensation rate of $253.33.
The parties agreed to stipulate all the medical records of deceased into the record.
The Form 19 filed by the defendant-employer was stipulated into the record.
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. The deceased, William C. McCall, was born on May 11, 1931. He was sixty-two years of age on July 7, 1993. On this date, deceased was employed by C. N. Allen Company, Inc., defendant-employer as a mechanic and had been so employed for approximately 19 years. The deceased's job as a mechanic required him to work on various machines owned by the defendant including: bulldozers, dump trucks, chain saws, Ford trenchers and ditch witches.
2. At the time the deceased died on July 7, 1993, his average weekly wage was $380.00.
3. Deceased had already retired from defendant-employer and was drawing Social Security but he continued to work for the defendant-employer up until the date of his death, in fact, he had worked seventeen hours overtime the previous week.
4. The deceased was generally in good health. He had suffered a broken leg approximately fifteen years before and had bursitis in his shoulder. Deceased drank alcoholic beverages occasionally and when he drank, he drank heavily. He would go for months without drinking and had not drunk for a month previous to the date of his accident. Deceased also smoked occasionally when he drank. He was approximately 5' 10" tall and weighed approximately 205 pounds. Deceased had no other previous health problems.
5. Deceased was one of two mechanics at the defendant-employer's shop, the other mechanic being Steven West. Steven West testified that he drove the company truck and had taken on the responsibility for most of the field repairs since the deceased retired. The deceased accompanied Mr. West when it was necessary for him to have help to complete any repairs in the field. Otherwise, most of deceased's maintenance work was done at the defendant-employer's shop located on South Boulevard in Charlotte, North Carolina.
6. On July 7, 1993, deceased and Steven West arrived at the shop around 7:00 a. m. and they both proceeded to Concord where they were to repair a piece of equipment. Mr. West drove the company truck. After completing their maintenance work in Concord, Mr. West drove the deceased and himself to Kings Mountain to repair a Ford trencher, arriving at approximately noon.
7. It was unusually hot when they exited the air conditioned truck and they began to perspire almost immediately. The weather report for this date, stipulated to by both parties, indicates that the temperature was approximately 98 to 99 degrees Fahrenheit.
8. The deceased and Mr. West replaced a broken wheel sprocket on the Ford trencher, to which a large heavy chain was attached. They replaced the sprocket with a larger one. Then the men attempted to place the chain over the new sprocket. They worked with the heavy chain for approximately two hours in 99 degree weather. The men took turns with various tools including a hammer, pry bar and crow bar, but were never successful in remounting the chain over the sprocket. Mr. West testified that they worked on the chain for "what seemed like all day". Mr. West testified that this type of job is very frustrating. He also testified that the chain was too heavy to pull with bare hands.
9. After unsuccessfully working on the trencher for approximately two hours, the deceased and Mr. West decided that the trencher would have to be brought back to the shop where it could be repaired properly. The shop was covered and ventilated and contained equipment that would make the maintenance of the trencher much less strenuous.
10. Both men got back in the truck and proceeded back to Charlotte. Within five minutes the deceased complained of pain in his chest. Deceased stated that he thought his bursitis had moved down in his chest. Soon after, Mr. West stopped at a deli for lunch but the deceased stated that he was not hungry and would stay in the truck. After Mr. West returned from the deli they continued back toward Charlotte. Approximately thirty minutes after leaving the Kings Mountain work site, deceased went into convulsions. Mr. West pulled into a service station to call for help. At this time, deceased had lost consciousness.
11. When the Mecklenburg County EMS arrived, the deceased had no pulse or respiration. Deceased was pronounced dead at on July 7, 1993 at Mercy Hospital in Charlotte, North Carolina. Deceased's cause of death was determined by a medical examiner to be an acute myocardial infarction.
12. The medical examiner's report revealed that the deceased had pre-existing severe atherosclerotic coronary artery disease. This was a fairly severe three vessel coronary artery disease that pre-existed the date of the accident.
13. Both Dr. Thomason and Dr. Digby found that the conditions of deceased's job on July 7, 1993, including, but not limited to, the length of time he was engaged in strenuous activity, the degree of exertion required by the job, the frustration of not being able to complete the job and the temperature at the time, could or might have caused, or exacerbated a pre-existing condition, which resulted in deceased's death. Dr. Thomason testified, ". . . there's no question that if you take a cardiac condition which can predispose to myocardial infarction and if you couple that with some precipitating event, then you can set into motion the wheels of an acute myocardial infarction." And he added that, ". . . generally speaking the infarction doesn't occur at the very time of the exercise or the stain or the stress. It occurs some several minutes thereafter." In explaining why that is true, Dr. Thomason testified, "It has to do most likely with the fact that while you're exercising you have increased blood circulation, blood pressure is up some and you have presumably adequate flow to the heart. When you leave the area and you've exercised the muscles and that sort of thing — when you leave the area, sit down and relax, then the blood supply generally begins to shunt to the periphery or to the muscles that need to be replenished with nutrients and the waste products carried away, and so you get a shunting of the blood supply away from the heart, away from the central part of the body to the periphery and — and indeed you set into motion decreased coronary blood flow and subsequent myocardial infarction." Dr. Thomason was of the opinion that the unusual heat and the heavy exertion played a role in the cause of death as well as the previous physical condition of the deceased and the frustration at being unable to complete the job with the tools at hand. Dr. Digby was also of the opinion that the combination of the extremely high heat and the strenuous physical exertion were precipitating factors in the deceased's heart attack. Dr. Thomason is an expert in the field of medicine with a specialty in cardiology and Dr. Digby is an expert in the field of medicine with specialty in cardiology and cardiovascular disease.
14. Having to struggle with a heavy chain that would not fit the sprocket on the trencher and not having the proper shop equipment at the remote job site to complete the job, coupled with the unusually hot weather, was an unusual event that caused the heart attack that killed the deceased and constituted an injury by accident within the meaning of the Workers Compensation Act. While there was testimony that deceased had had difficult repair jobs in the past, had had to work without the proper equipment and had worked outside in high temperatures in the past there was no evidence of all three of these things having occurred simultaneously in the past and thus no evidence that the convergence of the three had become part of the regular job routine.
15. Plaintiff Janie McCall is the widow of the deceased employee and as such is entitled to the conclusive presumption of dependency contained in N.C.G.S. 97-39. No evidence was submitted with respect to whether Plaintiff widow was unable to support herself because of physical or mental disability as of the date of death of the employee. N.C.G.S. 97-38.
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. On July 7, 1993, deceased sustained an injury by accident arising out of and in the course of his employment. N.C. G.S. 97-2(6).
2. Deceased's employment duties immediately preceding his fatal heart attack constituted an interruption of his normal work routine. Having to struggle with a heavy chain that would not fit the sprocket on the trencher and not having the proper shop equipment at the remote job site to complete the job was an unusual event that, coupled with the unusually hot weather, constituted an interruption in the normal work routine, caused the heart attack that killed the deceased and constituted an injury by accident within the meaning of the Workers Compensation Act. N.C. G.S. 97-2(6). Gabriel v. Newton, 227 N.C. 314, 42 S.E.2d 96
(1947); Dillingham v. Yeargin Construction Co., 320 N.C. 499, 502,358 S.E.2d 380, 381-82 (1987); Ballenger v. ITT Grinnell IndustrialPiping, 320 N.C. 155, 357 S.E.2d 683 (1987).
3. Plaintiff widow is entitled to burial expenses not exceeding $2,000 and is also entitled to compensation at the rate of $253.33 for a period of 400 weeks. N.C.G.S. 97-38. Plaintiff's attorney is entitled to a fee of one-third of the compensation under his fee agreement with Plaintiff, which the Full Commission finds to be reasonable.
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
AWARD
1. Defendants shall pay the burial expenses of the deceased employee, not exceeding $2,000.00, to the Plaintiff and shall pay compensation to Plaintiff of $253.33 per week for a period of 400 weeks, with every third check payable directly to Plaintiff's attorney.
2. Plaintiff's attorney is given 60 days from the date of this Opinion and Award to take the Deposition of Plaintiff with respect to whether Plaintiff widow was unable to support herself because of physical or mental disability as of the date of death of the employee. N.C.G.S. 97-38. A stipulation of the parties with respect to these facts can be substituted for such deposition.
3. Defendants shall pay the costs.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ____________ DIANNE C. SELLERS COMMISSIONER