HORTON v. POWELL PLUMBING & HEATING OF N.C., INC.

[135 N.C. App. 211 (1999)]

———————

SANDRA WALKER HORTON, WIFE OF, JAMES W. HORTON, JR. AND SANDRA ASHLEY HORTON, DEPENDENT MINOR CHILDREN OF JAMES W. HORTON, DECEASED, EMPLOYEE, PLAINTIFF v. POWELL PLUMBING & HEATING OF N.C., INC., EMPLOYER; SELF-INSURED (CONSOLIDATED ADMINISTRATORS, INC.), DEFENDANTS

No. COA98-1376

(Filed 5 October 1999)

**Workers' Compensation— death benefit—presumption that death the result of an accident—not rebutted**

Defendants did not rebut the presumption that decedent's death was accidental where there was evidence that decedent committed suicide, but there was other competent evidence that he did not and the Commission chose to believe the latter. Issues of credibility are for the Commission.

Appeal by defendants from Opinion and Award filed 10 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 August 1999.

*Farris & Farris, P.A., by Robert A. Farris, Jr. and Thomas J. Farris, for plaintiff-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by J. Michael Mackay, for defendant-appellants.*

---

GREENE, Judge.

Powell Plumbing and Heating of North Carolina, Inc. (Employer) and Consolidated Administrators, Inc. (Carrier) (collectively, Defendants) appeal from the Opinion and Award of the North Carolina Industrial Commission (Commission) awarding Sandra Walker Horton, wife of deceased employee, James W. Horton (Decedent), and James W. Horton, Jr. and Sandra Ashley Horton, dependent minor children of Decedent (collectively, Plaintiffs) weekly compensation at $155.33 for 400 weeks, medical expenses, burial expenses, attorney's fees, and costs.

In support of the Award, the Commission entered the following pertinent Conclusions of Law:

1. . . . [W]hen an employee is found dead at his place of work, there is a presumption that the employee died by accident while in the scope and course of employment and without anything to the contrary, the claim is compensable. Here, the [D]efendant has failed to sufficiently or convincingly rebut the presumption in that it has not offered any credible or convincing evidence to the contrary. Defendant has offered some evidence, but due to the numerous inconsistencies and unanswered questions, the evidence offered is not credible or convincing and is not accepted as fact in this matter to the extent that [D]efendant would be able to sufficiently rebut the . . . presumption.

2. The [D]ecedent died as a result of an accident sustained while in the course and scope of his employment with the [D]efendant-employer.

In support of these conclusions, the Commission entered the following pertinent Findings of Fact:

2. Decedent was found dead in the shop area of the building at which [D]efendant-employer conducted its business. . . . The cause of his death as determined by the North Carolina Medical Examiner was a gunshot wound to the chest.

. . . .

7. . . . [T]here was no indication that [D]ecedent had struggled with anybody.

8. David L. Deberry [Detective Deberry] was the detective with the Guilford County Sheriff's Department assigned to the case. It was his opinion that [D]ecedent had committed suicide. . . .

9. Detective Deberry's opinion was [based in part on] the fact that he could not come up with any leads that would indicate that anybody else had any motive to kill [D]ecedent. Additionally, [D]ecedent had traces of [gun] powder residue on his hand.

10. Detective Deberry found a gun [wrapped in a shirt] on top of and at the rear of a box, which was on top of a shelf and next to a wall and which was some 12 to 13 feet above the floor and to the rear of the location of [D]ecedent's body. He theorized that after the [D]ecedent shot himself, he tossed the gun with his right hand across his left shoulder up onto the box and shelf. . . .

. . . .

16. Decedent had gun powder residue in the web of his hand and on the back of his hand that was consistent with his holding the gun in a normal fashion at the time of its discharge. The gun powder pattern on [D]ecedent's hand was also consistent with his hand being in the area of the gun when it discharged.

17. William S. Best of Forensic Analytical Services and Testing was of the opinion that the powder disbursement was consistent with either [D]ecedent shooting himself or with somebody else shooting [D]ecedent.

18. Detective Deberry said that [D]ecedent's arms did not move after he was shot and that the [D]ecedent did not move otherwise. If [D]ecedent did not move his arm after being shot, it would have been impossible for him to . . . throw it [the gun] on top of the box on the shelf.

19. When viewing the evidence as presented by Detective Deberry, one is left with an unclear picture of what happened and with unanswered questions as to how [D]ecedent was shot. If one believes Detective Deberry, then [D]ecedent should have smeared blood when he threw the gun over his left shoulder, which did not happen. There is a remaining question of whether [D]ecedent could have lived long enough to wrap the gun in the shirt it was found in and then to throw it on top of the box and shelf which cannot be clearly and convincingly answered. Further, it cannot be clearly and convincingly answered whether the gun was wrapped in the shirt after [D]ecedent shot himself or whether he was shot by somebody else.

. . . .

22. Neither Detective Deberry, nor anybody else, found a suicide note.

23. When Detective Deberry asked [D]ecedent's family and co-workers (employees), nobody had any indication that [D]ecedent was depressed or suicidal. Decedent's medical history did not have any indication that he had a history of depression or mental illness.

. . . .

26. A review of all the competent, credible, and convincing evidence offered in this matter leaves one with a lot of questions and no answers of what really happened at the time the gun discharged and who pulled the trigger.

27. It is clear that no one knows for sure how or by whom the [D]ecedent was shot. It is clear that the undersigned cannot accept the facts as Detective Deberry would have us to believe, because they are not consistent with the medical examiners report. For example, on the one hand, Detective Deberry believes that the [D]ecedent shot himself and after doing so, wrapped the gun in a shirt and threw it over his left shoulder with his right hand and arm. However, on the other hand, he also believes that the [D]ecedent did not move his arms after being shot.

The pertinent evidence reveals that on 10 October 1994 Decedent's dead body was found on the premises of his employer, Powell Plumbing & Heating of North Carolina, Inc. (Powell Plumbing), a corporation owned by Decedent, where he had been working just prior to his death.

Plaintiffs brought this action to recover workers' compensation benefits for the death of Decedent. Decedent had sustained a single gunshot wound to the upper left chest area, which was determined to be the cause of death. The original death certificate for Decedent listed the cause of death as a "homicide," but eventually the Guilford County Sheriff's Department determined that Decedent's death was a suicide, resulting from a self-inflicted gunshot wound.

The evidence shows that late in the evening of Sunday 9 October 1994, Decedent drove to Powell Plumbing and parked in front of the business. Two employees of a business near Powell Plumbing, who were taking a break at around 11:30 or 11:45 in the evening, reported hearing two men loudly arguing somewhere in the Main Street area

HORTON v. POWELL PLUMBING & HEATING OF N.C., INC.

[135 N.C. App. 211 (1999)]

near where the Decedent was found. Neither witness saw these men, but there was another witness who reported seeing a blue or dark colored mini sized pick-up truck backed in the parking lot at about 11:30 that same night in front of the building.

The next morning, James L. Lax (Mr. Lax), an employee of Powell Plumbing, reported to work at the office between 6:00 and 6:30 a.m. Once inside the business, Mr. Lax found Decedent's body lying face down in a pool of blood in the metal shop. Although Mr. Lax testified at the hearing before the Commission that he deactivated the burglar alarm before entering the building, he reported to the Guilford County Sheriff's Department on the day of his discovery that the green light of the alarm was on, signifying the alarm was off.

The investigating officers of the Guilford County Sheriff's Department found no signs of forced entry. During the initial investigation on 10 October 1994, no weapon was found. It was not until the next day, 11 October 1994, that a 22-caliber pistol was located wrapped in a cloth and a work shirt. The pistol was located in between two taller boxes on top of a smaller box approximately 12 to 15 feet off the floor on a shelf suspended from the ceiling.

There were no finger prints found on the handle of the pistol matching those of Decedent's. Detective Deberry speculated that after shooting himself in the chest Decedent wiped his fingerprints from the pistol, wrapped the pistol in a cloth and shirt, and from a kneeling position threw the pistol 12 to 15 feet in the air behind him on a shelf, without untucking his shirt, without spreading blood from his wound anywhere, or without disturbing the wrapping around the pistol.

---

The dispositive issue is whether Defendants rebutted the presumption that Decedent's death was accidental.

"In order for a claimant to recover workers' compensation benefits for death, he must prove that death resulted from an injury (1) by accident; (2) arising out of his employment; and (3) in the course of the employment." *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 366, 368 S.E.2d 582, 584 (1988); N.C.G.S. § 97-2(6)(10) (Supp. 1988). Upon a showing the decedent was in the course and scope of his employment at the time of his death, the claimant is entitled to a presumption that the death was the result of an accident and arose out of his employment. *Pickrell*, 322 N.C. at 368, 368 S.E.2d at 585. Once the presumption is established, defendant-employer has the burden of

presenting evidence showing the death was caused by some non-accidental event or the injury did not arise out of the employment. *Id.* at 371, 368 S.E.2d at 586.

In this case, Defendants do not dispute Decedent's death nor do they argue that his death occurred outside the course and scope of his employment. Thus Plaintiffs are entitled to the presumption that Decedent's death was accidental and arose out of his employment. Accordingly, the Commission did not err in concluding Plaintiffs were entitled to a presumption of compensability.

Defendants do contend they rebutted this presumption and direct our attention to the evidence that Decedent died as a result of suicide. *See* N.C.G.S. § 97-12(3) (1991) (decedent employee not entitled to workers' compensation benefits if death caused by "willful intention to injure or kill himself"). There is competent evidence in this record supporting Defendants' argument. There is, however, other competent evidence and inferences from that evidence supporting the proposition that Decedent did not commit suicide. *See Hollman v. City of Raleigh*, 273 N.C. 240, 249, 159 S.E.2d 874, 880 (1968). The Commission chose to believe the latter and issues of credibility are for the Commission. *Hillard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Furthermore, if there is any competent evidence in the record to support the findings of the Commission, we are bound by that determination. *Id.* at 595, 290 S.E.2d at 684.

Affirmed.

Judges TIMMONS-GOODSON and SMITH concur.