CARLOS L. DILLINGHAM, Employee-Plaintiff v. YEARGIN CONSTRUCTION COMPANY, Employer, and AETNA CASUALTY AND SURETY CO., Carrier, Defendants

No. 638PA86

(Filed 28 July 1987)

**Master and Servant §§ 55.1, 67— workers' compensation—heat-related heart attack—injury by accident**

Plaintiff's cardiac arrest occurred by accident within the meaning of the Workers' Compensation Act where plaintiff was employed as an instrumentation fitter at the Brunswick Nuclear Power Plant, the job sometimes required

Dillingham v. Yeargin Construction Co.

plaintiff to enter the reactor building while it was in operation, plaintiff was required on those occasions to wear a radiation suit which covered his entire body and caused him to sweat heavily, all openings in the suit were sealed with tape, and both medical experts implicated the wearing of the suit and plaintiff's consequent inability to dissipate heat as a cause of his cardiac arrest.

ON plaintiff's petition for discretionary review of the decision of the Court of Appeals, 82 N.C. App. 684, 348 S.E. 2d 143 (1986), which affirmed the opinion and award of the Industrial Commission, filed 10 January 1986, denying plaintiff's claim for compensation. Heard in the Supreme Court 12 May 1987.

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Vaiden P. Kendrick, Michael Murchison, and Reid G. Hinson, for plaintiff.*

*Marshall, Williams, Gorham & Brawley, by Ronald H. Woodruff, for defendants.*

MARTIN, Justice.

The sole issue presented for review is whether plaintiff-employee's cardiac arrest occurred "by accident" within the meaning of the Workers' Compensation Act. We hold that plaintiff's injury was accidental and accordingly reverse the Court of Appeals.

Plaintiff was employed by defendant construction company as an instrumentation fitter at the Brunswick Nuclear Power Plant. The job sometimes required plaintiff to enter the reactor building while it was in operation to repair control valves which were part of the reactor's cooling system. On those occasions, plaintiff was required to dress in special clothing designed for radiation protection. The outfit consisted of a heavy radiation suit, including coveralls, plastic boots, rubber boots, cotton gloves, surgical gloves, work gloves, and a hood. Duct tape was wrapped tightly around the neck, wrist, and ankle areas to seal any seams or gaps.

On 20 June 1984, plaintiff and a co-worker were assigned to work on a control valve in the HPIC room, an area located directly beneath the reactor. Plaintiff donned protective garb and entered the HPIC room. After working on the valve and sweating profusely for about thirty minutes, plaintiff stood up and struck his head on a pipe. He stopped sweating and began experiencing chills and dizziness. Plaintiff alerted his co-worker, and they went to the first aid area, where plaintiff lost consciousness. He was

then transported to the hospital emergency room and treated for cardiac arrest.

At the hearing before the deputy commissioner, plaintiff testified that it was 90 degrees outside on 20 June, that the indoor temperature was higher because heat builds up inside, that he began to sweat heavily as soon as he dressed in the radiation suit, that it was miserably hot in the HPIC room, and that there was inadequate ventilation in the work area.

Plaintiff's co-worker, Robert Harrelson, testified that it was hot in the HPIC room but not abnormally hot for a June day, that the indoor temperature was possibly the same as the outdoor temperature, and that the HPIC room had an air conditioning duct off to the side rather than directly over the work area. He acknowledged that a number of employees had sought first aid for heat-related problems and that some had been sent to the hospital emergency room because of heat exhaustion.

Dr. William F. Credle, Jr., who treated plaintiff in the hospital emergency room, testified that the history he had received indicated that plaintiff had been working in temperatures of 85 degrees or more in a very confining radiation suit. He stated that plaintiff had suffered cardiac arrest precipitated by the heat exhaustive conditions present on the job. Cardiovascular tests showed no evidence of significant coronary artery disease. He further testified that plaintiff would not have suffered cardiac arrest had he not been working under the conditions present at the job site.

Dr. William J. Grossman, who administered cardiovascular tests to plaintiff, corroborated Dr. Credle's diagnosis. He testified that plaintiff's cardiac arrest resulted from heat stroke due to a hot environment and a confining radiation suit that would not allow effective dissipation of heat. His tests revealed no underlying heart disease.

The deputy commissioner made the following pertinent findings:

2. [Plaintiff] was required, when entering the reactor building, to dress out in radioactive protection clothing. This included a suit, two pairs of plastic boots, coveralls, cotton

gloves and work gloves. Plaintiff was also required to wear a hood which covered his head as a part of this equipment.

. . . .

4. Prior to going to his assigned work area, plaintiff dressed out in his radiation protection suit. When plaintiff completed putting on the suit he began to perspire heavily, as he had done on each occasion he had worn the suit prior to this day. The outside temperature on the date in question was approximately 90 degrees. The interior temperature of the HPIC area at that time was approximately 85 degrees and the area was ventilated by conditioned air.

. . . .

7. On the date in question, plaintiff sustained an injury which arose out of and in the course of his employment with the defendant employer. Plaintiff's injury did not however occur as the result of any interruption of his normal work routine. Plaintiff was not exposed to extreme heat nor did his injury result from extreme exertion.

8. Plaintiff was not at an increased risk of developing heat exhaustion or cardiac arrest as a result of his work in the HPIC area, than the general public not so employed.

From these findings the commissioner concluded that plaintiff's injury had not occurred as the result of an accident and denied compensation. The full Commission and the Court of Appeals affirmed. Our inquiry on appeal is limited to a consideration of whether the evidence supports the findings of fact and whether the findings of fact justify the conclusions of law. *McLean v. Roadway Express*, 307 N.C. 99, 296 S.E. 2d 456 (1982). Findings of fact which are essentially conclusions of law will be treated as such upon review. *See Perkins v. Insurance Co.*, 274 N.C. 134, 161 S.E. 2d 536 (1968). We deem paragraph 8 to be a conclusion of law and hold that it is not supported by the findings of fact.

We have stated that an injury does not arise by accident if it occurs when the claimant is carrying on his normal work routine, performing his customary duties in the usual way. *Lawrence v. Mill*, 265 N.C. 329, 144 S.E. 2d 3 (1965). We have also held that injuries caused by a heart attack must be precipitated by unusual

or extraordinary exertion in order to be compensable. *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 82 S.E. 2d 410 (1954). It seems clear that the commissioner had these well-settled rules in mind when finding the facts as stated in paragraph 7. However, these findings are not relevant to a determination of this case, as an exception to the above-stated rules has been carved out by *Fields v. Plumbing Co.*, 224 N.C. 841, 32 S.E. 2d 623 (1945).

*Fields* states the rule to be applied when the injury is sustained through occupational exposure to heat or cold:

> [W]here the employment subjects a workman to a special or particular hazard from the elements, such as excessive heat or cold, likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts. . . . The test is whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed.

*Id.* at 842-43, 32 S.E. 2d at 624 (citations omitted). *Fields* represents the majority rule in this country. Other jurisdictions hold, with virtual unanimity, that when the conditions of employment expose the claimant to extreme heat or cold, injuries such as heatstroke, heat exhaustion, heat prostration, sunstroke, freezing, and frostbite are considered accidental. 1B A. Larson, *The Law of Workmen's Compensation* § 38.40 (1987); 99 C.J.S. *Workmen's Compensation* § 187 (1958); 83 A.L.R. 234 (1933).

We note that the deputy commissioner correctly recognized the applicability of *Fields* to the present case—his conclusion of law cites *Fields* as the controlling authority, and paragraph 8 addresses increased risk of heat exhaustion, the crucial issue under *Fields*. Based upon our examination of the record, however, we hold that the conclusion of law in paragraph 8 is supported neither by the findings of fact nor by the evidence.

Contrary to the conclusion in paragraph 8, the evidence unequivocally demonstrates that plaintiff was exposed to an increased risk of heat-related illness because of his employment. As noted in paragraphs 2 and 4 of the commissioner's findings, plaintiff was required to wear a radiation suit when inside the reactor building which covered his entire body and caused him to sweat heavily. All openings in the suit were sealed with tape. Both

medical experts implicated the wearing of the suit, and plaintiff's consequent inability to dissipate heat, as a cause of the cardiac arrest. We have held that the type of clothing worn in employment can create the increased risk contemplated by *Fields. See Pope v. Goodson,* 249 N.C. 690, 107 S.E. 2d 524 (1959) (the wearing of wet clothing and a nail apron by reason of his employment exposed claimant to greater risk of being struck by lightning; death held compensable). Significantly, uncontradicted evidence showed that other employees at the plant had suffered heat-related illnesses leading to emergency room treatment.

It is clear that the type of heavy clothing required by his employment exposed plaintiff to a greater danger of overheating than that to which he otherwise would have been subjected. Members of the public not so employed would not ordinarily wear heavy layers of clothing such as coveralls, boots, gloves, and a hood in an enclosed space with temperatures reaching 85 degrees. *Fields v. Plumbing Co.,* 224 N.C. 841, 32 S.E. 2d 623.

It was not necessary that plaintiff present evidence as to the exact temperature inside the radiation suit in order to show an increased risk of overheating. *Cf. McCuiston v. Addressograph-Multigraph Corp.,* 308 N.C. 665, 303 S.E. 2d 795 (1983) (claimant need not measure noise level to support claim for hearing loss); *Gay v. J. P. Stevens & Co.,* 79 N.C. App. 324, 339 S.E. 2d 490 (1986) (claimant need not measure concentrations of dust and toxins to support claim for occupational disease due to dust and fume inhalation); *Lake v. Midwest Packing Company,* 301 S.W. 2d 834 (Mo. 1957) (claimants need not establish exact temperature in workplace to support heatstroke claim). Evidence that the room temperature was 85 degrees and that plaintiff suffered heat exhaustion while wearing a radiation suit which inhibited his body's ability to radiate heat is sufficient.

We are not persuaded by the Court of Appeals' attempt to distinguish *Fields.* The Court of Appeals places great reliance upon the fact that the claimant in *Fields* labored an entire day in temperatures measuring as high as 104 degrees. A thermometer reading alone is not dispositive in cases of heat-related illness. It is the province of the medical experts, not the appellate courts, to determine whether a room temperature of 85 degrees may be a factor in causing heat exhaustion when all circumstances, in-

cluding the type of clothing worn, are considered. *Cf. T. J. Moss Tie Co. v. Rollins*, 191 Tenn. 577, 235 S.W. 2d 585 (1951) (claimant suffered heat prostration when temperatures 85 or 86 degrees; death compensable under test similar to that in *Fields*).

We therefore reverse the Court of Appeals and remand to that court for further remand to the Industrial Commission for reconsideration on the present record in a manner consistent with this opinion.

Reversed and remanded.