ANN JONES GILBERT, Widow of HUGHES L. GILBERT, JR., Deceased, Employee, Plaintiff v. ENTENMANN'S, INC., Employer, and HARTFORD ACCIDENT AND INDEMNITY CORPORATION, Carrier, Defendants

No. 9210IC1348

(Filed 15 February 1994)

1. **Master and Servant § 56 (NCI3d)— workers' compensation— presumption of compensability—inapplicability where employee died from subarachnoid hemorrhage**

   The presumption of compensability as set forth in *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, was inapplicable in this case since that presumption applies only where there is no evidence that decedent died other than by a compensable cause, while in this case the evidence indicated that decedent died from a subarachnoid hemorrhage.

   **Am Jur 2d, Workers' Compensation §§ 572, 573.**

2. **Master and Servant § 56 (NCI3d)— workers' compensation— no causal relation between employment and injury—competent evidence to support finding**

   There was competent evidence in the record to support the Industrial Commission's finding that the physical exertion required to move a heavy desk did not cause deceased employee's ruptured aneurysm.

   **Am Jur 2d, Workers' Compensation §§ 251, 252.**

3. **Master and Servant § 94 (NCI3d)— workers' compensation— deputy commissioner's opinion adopted by full Commission— no error**

   There was no merit to plaintiff's contention that it was insufficient for the full Industrial Commission merely to adopt the deputy commissioner's opinion and award without clarifying whether the fatal subarachnoid hemorrhage was caused by the minor rupture decedent suffered when moving a desk for his employer since the full Commission, in reviewing the deputy commissioner's award, has the authority to determine the case from the written transcript of the hearing before the deputy commissioner and the record before it.

   **Am Jur 2d, Workers' Compensation §§ 708, 709.**

GILBERT v. ENTENMANN'S, INC.

[113 N.C. App. 619 (1994)]

Appeal by plaintiff from opinion and award filed 14 October 1992 by the Industrial Commission. Heard in the Court of Appeals 17 November 1993.

*Young Moore Henderson & Alvis, P.A., by David M. Duke and Carolyn Sprinthall Knaut, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog, by Kari Lynn Russwurm, for defendant-appellee Entenmann's, Inc.*

WYNN, Judge.

Plaintiff Ann Jones Gilbert seeks workers' compensation benefits for the death of her husband, Hughes L. Gilbert, Jr. Mr. Gilbert was employed with defendant Entenmann's, Inc. as a bakery distributor supervisor and his duties required him to perform such marketing and advertising functions as attending trade shows and setting up retail displays.

On 11 August 1989, pursuant to defendant's instructions, plaintiff and decedent drove to Kernersville, North Carolina to move a large desk which weighed between 250 and 300 pounds. Another employee had agreed to help decedent, but decedent arrived early and began to unload the desk alone. Decedent lifted the desk onto a hand truck and was rolling it towards defendant's office when he suddenly dropped the hand truck and clasped the back of his head in pain. His face turned pale and he began to perspire heavily. This pain was later diagnosed as a sentinel headache which is associated with a minor leakage of blood from an aneurysm in the brain. An aneurysm is a congenital defect which weakens the arterial wall of a blood vessel. An aneurysm ruptures when the arterial wall is not strong enough to withstand the forces generated by internal blood pressure.

Plaintiff and decedent then drove to Winston-Salem to pick up supplies he had to deliver to a trade show in Charlotte. During the drive, decedent complained of constant headaches. When the couple returned home, decedent began complaining of a pain in the back of his head, a stiff neck, and nausea. He did not eat well and began going to bed earlier than usual.

These complaints continued until 16 August 1989, when decedent went to Lenoir, North Carolina for a meeting at Merita Bakery. While working at the bakery, decedent collapsed and was found lying unconscious on the floor. No one witnessed his collapse. He

never fully regained consciousness, although he was able to give some medical history upon his admission to the hospital.

Decedent was examined by Dr. David M. Jones, who suspected he had suffered a subarachnoid hemorrhage, a bleeding into the fluid-filled spaces which surround the brain. Dr. Jones inserted a drain into one of these spaces to relieve excess pressure inside the head. Decedent's condition was stabilized, but early in the morning of 17 August 1989 he fatally suffered a sudden catastrophic hemorrhage which Dr. Jones diagnosed as a "massive re-bleeding episode around the brain stem."

Plaintiff then filed this action for death benefits before the Industrial Commission. The deputy commissioner received deposition testimony from three medical experts, Dr. Jones, Dr. Arthur E. Davis, Jr., a clinical pathologist, and Dr. Steven Mitchell Freedman, a neurologist, and then made the following findings of fact:

10. The physical effort in moving the desk did not cause the leakage from decedent's aneurysm. This finding of causation is based on the opinion of Dr. David Jones, a neurosurgeon. On the issue of causation, there was considerable disagreement, both from the testifying physicians and the medical literature. The undersigned finds significant weight in the opinion of Dr. Jones because: (1) He was the treating physician with first-hand knowledge of decedent's condition, (2) Dr. Jones' opinion is supported by Dr. Arthur Davis, a clinical pathologist, and (3) The medical literature supports, as well as disagrees, with Dr. Jones' opinion.

. . .

18. The cause of decedent's death was a subarachnoid hemorrhage. The subarachnoid layer is the space between the arachnoid layer and the PIA [layer]. In this space is spinal fluid which cushions the brain. A hemorrhage into this space increases intra-cranial pressure and destroys the brain.

19. The primary factual question in the present case is as follows: Did the physical exertion of moving a desk on 11 August 1989 cause a subsequent rupture of decedent's aneurysm on 16 August 1989 and the early morning hours of 17 August 1989? Dr. Jones and Dr. Davis were of the opinion that there was no correlation between decedent's moving the desk and the rupture of his aneurysm. Dr. Freedman was asked if it

is "inevitable" that a massive hemorrhage would follow the leakage of an aneurysm, and he could not say that this was "inevitable." However, Dr. Freedman did find "that there is an excellent chance that further bleeding is likely to occur." Dr. Freedman also found the leakage of 11 August 1989 and the later ruptures were "related." Considering the tentative opinions of Dr. Freedman, in light of the opinions of Dr. Jones and Dr. Davis, the undersigned finds that there is insufficient evidence in the record from which the undersigned can infer there was a correlation between the decedent's efforts at moving the desk on 11 August 1989 and the subsequent ruptures of his aneurysm on 16 and 17 August 1989.

The deputy commissioner then concluded the subarachnoid hemorrhages decedent suffered on 16 and 17 August 1989 were not the result of an injury by accident and that plaintiff was not entitled to death benefits under the Workers' Compensation Act. Plaintiff appealed to the full Commission which reviewed the record, concluded there was no adequate ground for amending the award, and adopted the deputy commissioner's opinion and award as its own. From this decision, plaintiff appeals.

I.

[1] Plaintiff first assigns error to the Commission's application of *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988) to the facts of this case. Plaintiff argues that *Pickrell* entitles her to a presumption that decedent's death was work-related and therefore compensable and that the Commission erred by concluding that the *Pickrell* holding was not applicable. We disagree.

"In order for a claimant to recover workers' compensation benefits for death, he must prove that death resulted from an injury (1) by accident; (2) arising out of his employment; and (3) in the course of the employment." *Pickrell*, 322 N.C. at 366, 368 S.E.2d at 583; *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E.2d 529 (1977); N.C. Gen. Stat. § 97-2(6), (10) (1991). The burden is on the claimant to prove each of these elements. *O'Mary v. Land Clearing Corp.*, 261 N.C. 508, 135 S.E.2d 193 (1964); *Henry v. A. C. Lawrence Leather Co.*, 231 N.C. 477, 57 S.E.2d 760 (1950). The death must result from an "accident," which implies the result was produced by a fortuitous cause. *Jackson v. North Carolina State Highway Comm'n*, 272 N.C. 697, 158 S.E.2d 865 (1965).

**GILBERT v. ENTENMANN'S, INC.**

[113 N.C. App. 619 (1994)]

In *Pickrell v. Motor Convoy, Inc.* the decedent, a tractor-trailer driver, was found dead behind a van he had been assigned to load and transport. *Pickrell*, 322 N.C. at 364, 368 S.E.2d at 583. There was no medical evidence as to the cause of death. *Id.* at 365, 368 S.E.2d at 583. The deputy commissioner found that there was sufficient evidence to raise the inference that the decedent slipped while standing on the van's bumper but then denied compensation, concluding that the death was not proven to be the proximate result of the accident. *Id.* at 366, 368 S.E.2d at 583, n.1. The Supreme Court reversed, holding that "[i]n cases . . . where the circumstances bearing on work-relatedness are unknown and the death occurs within the course of employment, claimants should be able to rely on a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown." *Id.* at 370, 368 S.E.2d at 586. This presumption of compensability is applicable, however, only where there is no evidence that decedent died other than by a compensable cause. *Strickland v. Central Service Motor Co.*, 94 N.C. App. 79, 379 S.E.2d 645, *disc. rev. denied*, 325 N.C. 276, 384 S.E.2d 530 (1989).

In the instant case, however, the evidence indicates that decedent died from a subarachnoid hemorrhage, which is not a compensable cause. *See Strickland*, 94 N.C. App. at 84, 379 S.E.2d at 648 (ruptured anterior aneurysm is not a compensable cause). Therefore, the presumption of compensability under *Pickrell* is not applicable and the Commission did not err by not applying it. This assignment of error is overruled.

II.

[2] Plaintiff next argues that the Commission failed to make crucial findings of fact concerning whether lifting the heavy desk caused decedent unusual stress and exertion and whether this exertion increased the likelihood of an aneurysm rupture. We disagree.

When reviewing appeals from the Industrial Commission, this Court's inquiry is limited to two questions of law: "(1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's findings of fact justify its legal conclusions and decision." *Sanderson v. Northeast Constr. Co.*, 77 N.C. App. 117, 120, 334 S.E.2d 392, 394 (1985); *see Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E.2d 101 (1981); *Watkins v. City of Asheville*, 99 N.C. App. 302, 392

S.E.2d 754, *disc. rev. denied*, 327 N.C. 488, 397 S.E.2d 238 (1990). The Commission's findings of fact are conclusive on appeal if supported by competent evidence even though there is evidence to support a contrary finding. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981). The Commission is also the sole judge of the credibility of a witness and the weight to be given to his testimony. *Gosney v. Golden Belt Mfg.*, 89 N.C. App. 670, 366 S.E.2d 873, *disc. rev. denied*, 322 N.C. 835, 371 S.E.2d 276 (1988). Contradictions in the evidence go to its weight and the Commission may consider any such inconsistencies in weighing the testimony of an expert and comparing it to the testimony of other experts. *Harrell v. J.P. Stevens & Co., Inc.*, 54 N.C. App. 582, 284 S.E.2d 343 (1981), *disc. rev. denied*, 305 N.C. 152, 289 S.E.2d 379 (1982). The Commission's findings of fact may be set aside on appeal only when there is a complete lack of competent evidence to support them. *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 265 S.E.2d 389 (1980).

In the instant case, the central question was whether the strain of lifting the desk caused decedent to suffer a sentinel headache which later developed into the subarachnoid hemorrhage which killed him. Dr. Freedman testified that, in his opinion, there was a causal link between lifting the desk and decedent's subsequent ruptured aneurysm. Dr. Jones and Dr. Davis testified, however, that there is no clear correlation between physical exertion and a ruptured aneurysm. Dr. Jones testified:

> In my opinion it is certainly conceivable that at the time of moving the desk Mr. Gilbert may have had the onset of a sentinel headache, which generally represents a minor leak preceding a larger subarachnoid hemorrhage. However, with the question to the relationship between his having the sentinel headache or minor leak being related to his moving the desk, my opinion is that is not necessarily related at all.

Dr. Davis testified that his opinion was "that there was no relationship between the exertion and the spontaneous occurrence of the hemorrhage within the central nervous system."

Dr. Davis also dismissed the medical literature used by Dr. Freedman as old anecdotal literature which tended to relate a catastrophic vascular event to some prior physical activity and stated that now such events are thought to occur spontaneously. While there is no consensus on what causes a subarachnoid hemor-

rhage, there is competent evidence in the record to support the Commission's finding that moving the desk did not cause decedent's ruptured aneurysm. This assignment of error is overruled.

## III.

[3] Plaintiff next assigns error to the full Commission's adoption of the deputy commissioner's opinion and award. Plaintiff argues it is not sufficient for the full Commission merely to adopt the deputy commissioner's opinion and award without clarifying whether the fatal subarachnoid hemorrhage was caused by the minor rupture decedent suffered when moving the desk. We disagree.

For the reasons already discussed, we have found competent evidence in the record to support the deputy commissioner's conclusion that he could not infer a correlation between decedent moving the desk on 11 August and subsequently suffering a fatal subarachnoid hemorrhage on 16 August 1989. Plaintiff argues, however, that the full Commission's adoption of the deputy commissioner's opinion and award prejudiced plaintiff by failing to provide adequate review of her case. This issue was addressed by this Court in *Crump v. Independence Nissan*, 112 N.C. App. 587, 436 S.E.2d 589 (1993), in which this Court held that the full Commission, in reviewing the deputy commissioner's award, has the authority "to determine the case from the written transcript of the hearing before the deputy commissioner and the record before it." *Crump*, 112 N.C. App. at 589, 436 S.E.2d at 592. Therefore we conclude the full Commission's review did not prejudice plaintiff. This assignment of error is overruled.

We have examined plaintiff's remaining assignment of error and find it to be without merit. For the foregoing reasons the opinion and award of the Industrial Commission is

Affirmed.

Judges LEWIS and McCRODDEN concur.