ELEANOR WOOTEN, Widow of WALTER WOOTEN, Deceased, Employee, Plaintiff v.
NEWCON TRANSPORTATION, INC., Employer, and FIREMAN'S FUND INSUR-
ANCE CO./THE GOFF GROUP, Carrier, Defendants

No. COA05-1107

(Filed 1 August 2006)

**1. Workers' Compensation— *Pickrell* presumption—truck driver dying of heart attack**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff was entitled to a presumption of compensability under *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, (that death was work related when the causal connection between the work and the death was unknown) where her truck-driver husband died of a heart attack either before or during a traffic accident.

**2. Workers' Compensation— truck driver dying of heart attack—*Pickrell* presumption—not rebutted**

The Industrial Commission correctly concluded that the *Pickrell* presumption of compensability was not rebutted by defendants in a workers' compensation case where the decedent, a truck driver, died of a heart attack either before or during a traffic accident.

**3. Workers' Compensation— hearsay—911 report with unknown callers—present sense impression**

The Industrial Commission did not err in a workers' compensation proceeding involving a truck accident by admitting a 911 dispatch report that contained statements from unknown callers. The Rules of Evidence do not strictly apply in workers' compensation cases. Even so, these calls were admitted as present sense impressions; the callers may not have seen the accident, but they saw the aftermath and reported this event or condition.

Appeal by defendants from opinion and award entered by the North Carolina Industrial Commission on 28 April 2005. Heard in the Court of Appeals 8 March 2006.

*Cobourn & Saleeby, L.L.P., by Sean C. Cobourn, for plaintiff-appellee.*

*Rudisill, White & Kaplan, P.L.L.C., by Garth H. White and Bradley H. Smith, for defendant-appellants.*

WOOTEN v. NEWCON TRANSP., INC.

[178 N.C. App. 698 (2006)]

HUDSON, Judge.

In May 2002, plaintiff, the widow of deceased employee Walter Wooten ("the decedent"), filed a claim with the North Carolina Industrial Commission alleging that her husband died in a traffic accident that occurred while he was working as a truck driver for defendant-employer. On 27 April 2004, Deputy Commissioner Philip A. Baddour, III, entered an opinion and award denying plaintiff's claim on the ground that decedent's death was not an injury by accident which arose out of his employment. On 28 April 2005, the Full Commission reversed and awarded plaintiff workers' compensation benefits. Defendants appeal. We affirm.

The facts as found by the Commission show that decedent Walter Wooten was employed as a truck driver with defendant-employer. On 9 May 2002 at approximately 10:45 p.m., decedent was driving a tractor-trailer on Interstate 81 in Augusta County, Virginia, at an estimated speed of 65 m.p.h., when his truck ran off the left side of the road, struck the guardrail, and came to rest in the median. No other vehicles were involved in the accident. Two unknown passersby called 911; one reported that it appeared that the truck struck debris in the road and ran off the highway, and the other reported that her husband checked the driver, who was unconscious, but still breathing. Virginia State Police were dispatched and emergency rescue workers pronounced decedent dead at the scene of the accident.

Following the accident, inspection of the left side of decedent's vehicle revealed two missing tires, which most likely came off as a result of damage to the tire rims when the vehicle hit the guard rail. At the time of his death, decedent was 51 years old with a prior history of heart conditions, including one prior heart attack. Dr. William Massello, an assistant medical examiner, performed an autopsy on decedent which revealed arteriosclerotic heart disease, or a hardening and narrowing of the arteries. He found severe hardening of the arteries that supply blood to the heart and testified that "they were so narrow that they were almost completely shut." In his first deposition, Dr. Massello testified that decedent's heart disease triggered an arrhythmia, causing decedent to experience a sudden heart attack, and that he believed that the immediate cause of decedent's death was arteriosclerotic heart disease. When asked whether the stress and physical exertion caused by losing control of his truck could have triggered decedent's arrhythmia, Dr. Massello stated: "If a person were physically or mentally stressed because of that and his blood pressure went up and the adrenaline came out and . . . physical

exertion took place, those would be things that would precipitate an arrhythmia in this man with this kind of heart disease." However, Dr. Massello stated that he could not say whether the arrhythmia occurred while decedent was driving or after he stopped.

In Dr. Massello's first deposition, the deputy commissioner had ruled that the 911 reports were inadmissible hearsay. However, the Full Commission subsequently determined that the reports were admissible and allowed a second deposition of Dr. Massello. In the second deposition, Dr. Massello again stated that he believed that decedent died as a result of an arrhythmia caused by arteriosclerotic heart disease. Regarding the 911 reports, Dr. Massello testified that he did not know whether defendant had the accident because of a heart attack or whether he had a heart attack because of the accident.

**[1]** Defendants first argue that the Commission erred in finding that plaintiff is entitled to the presumption under *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988), that decedent died from a compensable cause. In order for plaintiff to recover workers' compensation benefits for the death of the decedent, she must prove that he died from an injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6) (2001). Where the circumstances concerning the causal connection between decedent's work and his death are unknown, there is a "presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown," known as the "*Pickrell* presumption." *Pickrell*, 322 N.C. at 370, 368 S.E.2d at 586. Here, the Commission made the following relevant findings of fact:

4. . . . The 911 dispatch report indicates that an unknown 911 caller reported that decedent's tractor trailer "appeared to have struck tire debris in [the] road and ran off [the] roadway." The record is unclear why decedent's vehicle lost control.

\* \* \*

6. On May 10, 2002, an autopsy was performed on decedent by Dr. William Massello, the Assistant Chief Medical Examiner for the Virginia Office of the Chief Medical Examiner in western Virginia. Dr. Massello found that at the time of decedent's death, he was suffering from arteriosclerotic heart disease, or a hardening and narrowing of the arteries that supply blood to the heart . . . . Dr. Massello further testified that decedent's heart disease triggered an arrhythmia, causing decedent to experience a

sudden heart attack. Finally, Dr. Massello testified to a reasonable degree of medical certainty that the immediate cause of decedent's death was arteriosclerotic heart disease.

7. In his first deposition Dr. Massello was asked whether the stress and physical exertion caused by the truck losing two tires, striking the guardrail and going into the median could have triggered decedent's arrhythmia. Dr. Massello stated: "If a person were physically or mentally stressed because of that and his blood pressure went up and the adrenaline came out and . . . physical exertion took place, those would be things that would precipitate an arrhythmia in this man with this kind of heart disease. . . ." Upon further questioning whether the arrhythmia took place while decedent was driving the truck or after he stopped driving the truck, Dr. Massello stated that there was no way that he could say one way or the other.

8. During the second deposition, Dr. Massello again stated to a reasonable degree of medical certainty that decedent's death was a result of an arrhythmia caused by arteriosclerotic heart disease. Regarding the information contained in the 911 reports, Dr. Massello stated that he did not know whether decedent allegedly struck debris because there was a heart attack in progress or whether decedent struck debris because he could not avoid it. Dr. Massello further stated decedent "could have had the accident because of a heart attack or he could have had the heart attack because of the accident." Dr. Massello also indicated that most people who have heart attacks while driving manage to steer the vehicle off the road, even if they lose consciousness before the car stops.

The scope of this Court's review of an Industrial Commission decision is limited "to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998)). Here, although defendants assigned this error to several findings of fact, they do not make this argument in their brief. Thus, we deem these assignments of error abandoned, N.C. R. App. P. 28(b)(6) (2005), and treat the unchallenged findings of fact as conclusive on appeal. *First Union Nat'l Bank v. Bob Dunn Ford, Inc.*, 118 N.C. App. 444, 446, 455 S.E.2d 453, 454 (1995). Accordingly, the

question before us is whether the findings support the following chal-lenged conclusions:

> 4. [T]he greater weight of the evidence indicates that the cir-cumstances regarding the work-relatedness of decedent's death are unknown and that the death occurred as a result of an injury by accident sustained in the course of decedent's employment. It is uncontested that plaintiff was within the course of his employ-ment and was engaged in his employer's business at the time of his death. The fact that the immediate medical cause of dece-dent's death is known does not indicate that the *Pickrell* pre-sumption does not apply. *Pickrell v. Motor Convoy, Inc., supra.*

> 5. Decedent was involved in a motor vehicle accident while in the course and scope of his employment with defendant-employer. As a result of the accident, decedent suffered a cardiac arrhythmia and died. The only element at issue is whether dece-dent's injury by accident arose out of the employment. The evi-dence fails to show whether decedent had a heart attack that caused the motor vehicle accident or whether the circumstances of the accident caused decedent's heart arrhythmia. Therefore, defendants have failed to meet their burden of showing that plaintiff's arrhythmia occurred prior to and caused plaintiff's injury by accident. Defendants have not successfully rebutted the presumption by coming forward with sufficient, credible evi-dence that death occurred as a result of a non-compensable cause. *Pickrell v. Motor Convoy, Inc, supra; Melton v. City of Rocky Mount, supra.* Plaintiff is entitled to the *Pickrell* presump-tion that decedent's cause of death was an injury by accident aris-ing out of the employment. *Id.*

We conclude that the Commission's findings of fact support these conclusions of law and that the Commission correctly applied the *Pickrell* presumption here. Defendants contend that the Commission erred because the presumption of compensability applies "only where there is no evidence that decedent died other than by a com-pensable cause." *Gilbert v. Entenmann's, Inc.*, 113 N.C. App. 619, 623, 440 S.E.2d 115, 118 (1994). However, in *Gilbert*, the Court con-cluded that plaintiff was not entitled to the *Pickrell* presumption because decedent died from a subarachnoid hemorrhage, which is not a compensable cause. In contrast, "an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to *unusual or extraordinary exertion* or extreme conditions." *Cody v. Snider Lumber Co.*, 328

N.C. 67, 71, 399 S.E.2d 104, 106 (1991) (italics in original, internal citations and quotations omitted). Furthermore, we note that there was no evidence here that decedent died by other than a compensable cause—as the Commission concluded, "[t]he evidence fails to show whether decedent had a heart attack that caused the motor vehicle accident or whether the circumstances of the accident caused decedent's heart arrhythmia."

[2] Defendants also contend that if plaintiff is entitled to the *Pickrell* presumption, then they successfully rebutted it. In order to rebut the presumption, "the defendant has the burden of producing credible evidence that the death was not accidental or did not arise out of employment." *Bason v. Kraft Food Service, Inc.*, 140 N.C. App. 124, 128, 535 S.E.2d 606, 609 (2000). In *Bason*, decedent was found dead in his delivery truck, which was parked behind a building where he had been scheduled to make a delivery and an autopsy revealed the cause of death to be a cardiac arrhythmia caused by heart disease. *Id.* "Defendant, however, presented evidence and the Full Commission found as fact that 'there was nothing unusual about the route, the hours, or the amount or type of deliveries required of . . . Decedent' on the day of his death." *Id.* (ellipses in original). The Court held that the Commission correctly concluded that defendant rebutted the *Pickrell* presumption. *Id.* Here, it is undisputed that decedent was involved in an accident, and we conclude that the Commission correctly concluded that defendants did not rebut the presumption of compensability. We overrule this assignment of error.

[3] Defendants also argue that the Commission erred in admitting the 911 dispatch report into evidence because it is inadmissible hearsay. The Commission admitted a 911 dispatch report which contains statements of unknown callers. The rules of evidence do not strictly apply in worker's compensation cases, *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97, 360 S.E.2d 109, 110 (1987), but even if they did, the Commission did not err in exercising its discretion. Rule 805 provides that, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." N.C. Gen. Stat. § 8C-1, Rule 805 (2001). The Commission determined that the 911 calls were admissible in their entirety pursuant to the hearsay exceptions of Rule 803(1), (2), (6) and (8). N.C. Gen. Stat. § 8C-1 (2001). In their brief, defendants concede that the dispatch reports were admissible under Rule 803(6), "Records of Regularly Conducted Activity," and Rule 803(8), "Public Records and

Reports." But defendants contend that the statements of the unknown callers were not properly admitted pursuant to Rule 803 (1) or (2). We disagree. Rule 803(1), "Present Sense Impression," allows for admission of "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." N.C. Gen. Stat. § 8C-1. Defendants contend that there is no evidence that the statements were made "while the declarant was perceiving the event or condition, or immediately thereafter." However, we conclude that 911 calls reporting that "the [tractor trailer] appeared to have struck tire debris in road and ran off roadway" and that "[caller's] husband checked the driver and advised he was not moving but he was breathing," qualify as present sense impressions. Even if the callers did not observe the accident happen, they observed the aftermath and then reported this "event or condition." Because we conclude that the calls were admissible pursuant to Rule 803(1), we need not determine whether they qualify as excited utterances under Rule 803(2). We overrule this assignment of error.

Affirmed.

Judges HUNTER and BRYANT concur.