RONALD REAVES, Deceased, Employee, Plaintiff v. INDUSTRIAL PUMP SERVICE, Employer, AMERICAN INTERSTATE INSURANCE COMPANY, Carrier, Defendants

No. COA07-1244

(Filed 20 January 2009)

### 1. Workers' Compensation— *Pickrell* presumption—circumstances sufficient to raise issue

An Industrial Commission denial of workers' compensation death benefits was remanded for findings and conclusions about the *Pickrell* presumption that the death was work-related and compensable. The circumstances are sufficient to raise an issue concerning the *Pickrell* presumption; the fact that another employee testified about what he observed does not necessarily render *Pickrell* immaterial.

### 2. Workers' Compensation— standard—working conditions versus general public—not versus prior job assignments

The Industrial Commission in a workers' compensation case should have focused on the decedent's working conditions versus the general public, rather than on whether this assignment involved a greater risk than that to which decedent was normally exposed.

### 3. Workers' Compensation— inadequate training—issue raised in claim—not directly addressed

An Industrial Commission workers' compensation decision was remanded for further findings on whether inadequate training was a significant contributing factor in decedent's death where plaintiff had asserted the issue as part of the claim. While defendant argued that the Commission had addressed the issue, that finding and conclusion addressed whether defendant complied with statutory requirements, not the inadequate training issue.

Appeal by plaintiff from opinion and award entered 22 June 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 15 April 2008.

*Shipman & Wright, LLP, by Gary K. Shipman and William G. Wright, for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Nicole D. Viele and Meredith Taylor Berard, for defendants-appellees.*

GEER, Judge.

Plaintiff, the representative of deceased employee Ronald Reaves, appeals from the Industrial Commission's decision denying plaintiff's claim for workers' compensation benefits as a result of the death of Mr. Reaves. Because the Commission failed to address all the issues before it, and, on the issues reached, applied an incorrect legal standard, we must vacate the decision and remand for further findings of fact and conclusions of law. On remand, the Commission must (1) address the applicability of the *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 370, 368 S.E.2d 582, 586 (1988), presumption; (2) apply the proper legal standard for determining whether Mr. Reaves' death was caused by extreme work conditions; and (3) address plaintiff's argument that inadequate safety measures of defendant employer Industrial Pump Service ("IPS") were a significant contributing factor in Mr. Reaves' death.

## Facts

On 1 April 2004, Mr. Reaves, who was 54 years old, was working as a welder for IPS. Mr. Reaves underwent a medical examination on 16 January 2004, and the results indicated that (1) his blood pressure was 120/80, (2) his resting heart rate was 76 beats per minute, and (3) he had no prior history of cardiovascular disease.

Mr. Reaves and his work partner, Robert Templeman, a machinist, were scheduled to repair a pump at the International Paper plant in Franklin, Virginia on 1 April 2004. The repair job was supposed to be completed in one day with both Mr. Reaves and Mr. Templeman working a standard 12-hour shift. The pair traveled up to Franklin on 31 March 2004, stayed in a hotel, and went to work the next day.

On 1 April 2004, Mr. Reaves and Mr. Templeman arrived at the International Paper plant at about 7:00 a.m., but did not begin working until approximately 10:00 a.m. They were required to work in a pump room in the basement of the plant that had 15- to 18-foot ceil-

REAVES v. INDUSTRIAL PUMP SERV.

[195 N.C. App. 31 (2009)]

ings and was roughly 30 feet wide and 40 feet long. The temperature inside the room was in the mid-80s, and it was hotter and more humid inside the room than outside. The entrance to the room was approximately 30 to 35 feet away from the pump they were repairing. That doorway was 10 feet by 12 feet and led to a well-ventilated hallway that was about five to 10 degrees cooler than the pump room. The pump room itself had an upright fan placed 20 to 25 feet away from where Mr. Reaves and Mr. Templeman were working.

Once the pump was disassembled by International Paper employees, Mr. Reaves and Mr. Templeman began their work, first lifting and setting a lathe against the broken pump shaft. This task took about 10 minutes. The pair then set up lighting and arranged their tools around the pump. At that point, Mr. Templeman did his work on the pump for approximately three hours, during which time Mr. Reaves was not required to perform any physical labor, but rather had "down time" and went in and out of the room. After Mr. Templeman finished, Mr. Reaves worked for approximately 45 minutes, using a welding torch to heat up a metal sleeve to 300 degrees so that it would expand to fit over the broken shaft and then tack-welding the sleeve in place over the shaft.

After Mr. Reaves finished, he and Mr. Templeman went to lunch to let the unit cool down so they could finish their work. They returned to working on the pump sometime between 4:00 p.m. and 5:00 p.m. Mr. Templeman machined the sleeve and shaft to the pump over about roughly four hours, during which time Mr. Reaves was not working. Mr. Reaves, however, generally stayed in the room with Mr. Templeman, as it was IPS policy that employees not operate machinery alone. Occasionally, Mr. Reaves would, however, leave the room.

The Commission found that at about 7:00 p.m., Mr. Reaves "complain[ed] of not feeling well and being hot," and he told Mr. Templeman he was going to sit down in the hallway outside the pump room. The Commission further found that later, "[a]t approximately 10:30 p.m., [Mr. Reaves] again complained that he was 'hot and fatigued' and Mr. Templeman suggested that he go outside and take a break." Mr. Templeman believed this was the first time that Mr. Reaves had ever had to walk out of a job site because he was not feeling well and was hot.

Mr. Templeman walked with Mr. Reaves to their work truck. Mr. Reaves got into the truck, and Mr. Templeman told Mr. Reaves that he

REAVES v. INDUSTRIAL PUMP SERV.

[195 N.C. App. 31 (2009)]

would be back in about 45 minutes when he needed help reloading the truck. There were no witnesses to what occurred during the 45 minutes Mr. Reaves was alone in the truck.

When Mr. Templeman returned to the truck, he found Mr. Reaves slumped over in the passenger seat. After he received no response from Mr. Reaves when he tapped on the window, Mr. Templeman went to the plant's EMT station to get help. The medical staff found Mr. Reaves dead in the truck. An autopsy was performed on 2 April 2004, and the medical examiner noted: "At autopsy the decedent had evidence of severe atherosclerotic cardiovascular disease. . . . Cause of death: Coronary artery disease."

Plaintiff filed a claim for death benefits on 22 September 2004, and on 22 September 2006, the deputy commissioner entered an opinion and award denying the claim. Plaintiff appealed to the Full Commission, and in an opinion and award entered 22 June 2007, the Commission affirmed the deputy commissioner's decision with minor modifications. Plaintiff timely appealed to this Court.

Discussion

Appellate review of an Industrial Commission decision is limited "to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission's findings of fact are conclusive on appeal if supported by competent evidence "notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). The Commission's conclusions of law, however, are reviewed de novo. *Id.*

I

[1] Plaintiff first argues that the work-relatedness of Mr. Reaves' death is unknown, and thus the Commission should have applied the presumption of compensability articulated in *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 370, 368 S.E.2d 582, 586 (1988). Plaintiff argued *Pickrell* below, but the Commission failed to make any findings of fact or conclusions of law regarding that issue.

In *Pickrell*, 322 N.C. at 370, 368 S.E.2d at 586, our Supreme Court held that "[i]n cases . . . where the circumstances bearing on work-relatedness are unknown and the death occurs within the course of

employment, claimants should be able to rely on a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown." This Court reiterated that holding in *Wooten v. Newcon Transp., Inc.*, 178 N.C. App. 698, 700, 632 S.E.2d 525, 527 (2006) (internal quotation marks omitted), *disc. review denied*, 361 N.C. 704, 655 S.E.2d 405 (2007): "Where the circumstances concerning the causal connection between decedent's work and his death are unknown, there is a presumption that death was work-related, and therefore compensable, whether the medical reason for death is known or unknown . . . ."

In this case, both plaintiff's and defendant's expert witnesses agreed that Mr. Reaves suffered a cardiac arrhythmia although they disagreed whether that resulted in an actual heart attack. Both also agreed that exposure to heat can precipitate a cardiac arrhythmia, but disagreed whether it did so in this case. At the time that Mr. Reaves died, he had been alone for a substantial period of time. As the Commission found, however, he had twice complained of being hot and not feeling well. These circumstances are sufficient to at least raise the issue of the applicability of the *Pickrell* presumption.

"It is the duty and responsibility of the full Commission to make detailed findings of fact and conclusions of law with respect to every aspect of the case before it." *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988). The Commission must "decide all of the matters in controversy between the parties." *Vieregge v. N.C. State Univ.*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992).

Defendants argue that the Commission did not need to address the *Pickrell* presumption because the circumstances surrounding Mr. Reaves' death are known as a result of Mr. Templeman's testimony. The Supreme Court's reasoning in *Pickrell* suggests, however, that the mere fact that another employee can provide testimony regarding some of the circumstances should not, standing alone, be sufficient to negate the possible applicability of *Pickrell*. The Court explained the purpose of the presumption:

> Applying such a presumption of compensability is fair because the Workers' Compensation Act should be liberally construed in order to accomplish its purpose. Employers may be in a better position than the family of the decedent to offer evidence on the circumstances of the death. *Their employees ordinarily are the last to see the decedent alive, and the first to discover the*

*body. They know the decedent's duties and work assignments.* Additionally, if employers deem it necessary to determine the medical reason for death, they may notify the medical examiner of the county where the body is found, N.C.G.S. § .130A-383 (1986), and utilize the certificate of death which the medical examiner thereafter prepares. N.C.G.S. § 130A-385(a)(b) (1986). Such reports may be received as evidence, and certified copies thereof have the same evidentiary value as the originals. N.C.G.S. § 130A-392 (1986).

322 N.C. at 370, 368 S.E.2d at 586 (emphasis added). Thus, the fact that IPS' employee presented testimony regarding what he observed does not necessarily render *Pickrell* immaterial given that plaintiff's decedent is not here to testify as to what he actually experienced. The Commission must, therefore, address the applicability of the presumption.

Defendants further argue that the Commission did not err in failing to address the *Pickrell* presumption because the cause of Mr. Reaves' death is known and not work-related: coronary artery disease. The *Pickrell* Court explained, however, "[i]t is these circumstances [bearing on work-relatedness], not the medical reasons for death, which are critical in determining whether a claimant is entitled to workers' compensation benefits. A blow to the head, gunshot wound *or heart attack* may, or may not, be compensable, depending on the manner in which the event occurred. It is this aspect of causation which the presumption of compensability, properly understood, addresses." *Id.* (emphasis added).

Significantly, defendant's own expert witness, Dr. Arthur Davis, acknowledged that the pre-existing coronary artery disease would not, by itself, have caused Mr. Reaves' death: "Now, the coronary sclerosis by itself, de novo, cannot cause sudden death. You have to have a malignant dysrhythmia." He also agreed that there were numerous known causes of dysrhythmia. Dr. Davis' testimony places this case within the potential scope of *Pickrell* and *Wooten* because it raises, but does not answer, the question: what was the precipitating cause of the dysrhythmia? *See Wooten*, 178 N.C. App. at 703, 632 S.E.2d at 528 (affirming Commission's application of *Pickrell* presumption when Commission concluded " '[t]he evidence fails to show whether decedent had a heart attack that caused the motor vehicle accident or whether the circumstances of the accident caused decedent's heart arrhythmia' "). Contrary to defendants' contention, Mr. Reaves did

not specifically die of a pre-existing condition; there was some precipitating cause for the dysrhythmia that resulted in his death.

This fact distinguishes this case from *Gilbert v. Entenmann's, Inc.*, 113 N.C. App. 619, 440 S.E.2d 115 (1994), on which defendants rely. In *Gilbert*, the employee died of a subarachnoid hemorrhage, a non-compensable cause that is deadly in and of itself without a precipitating event. *Id.* at 623, 440 S.E.2d at 118. *See also Wooten*, 178 N.C. App. at 702, 632 S.E.2d at 528 ("However, in *Gilbert*, the Court concluded that plaintiff was not entitled to the *Pickrell* presumption because decedent died from a subarachnoid hemorrhage, which is not a compensable cause. In contrast, an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion or extreme conditions." (emphasis omitted) (internal quotation marks omitted)).

Defendants finally argue that if the *Pickrell* presumption does apply in this case, they "clearly presented evidence which rebutted any presumption." Defendants' contention, however, overlooks the fact that the Commission did not address *Pickrell* at all. This Court may not decide for the first time on appeal whether defendants rebutted the presumption. We, therefore, remand so that the Commission may make findings of fact and conclusions of law regarding the applicability of the *Pickrell* presumption. As the Commission may conclude on remand that the *Pickrell* presumption does not apply in this case or that defendants presented sufficient evidence to rebut it, we address plaintiff's other assignments of error.

II

[2] Plaintiff acknowledges that in the absence of the *Pickrell* presumption, plaintiff bears the burden of proving that Mr. Reaves' death arose out of his employment. The Commission's pertinent conclusion of law states:

> The greater weight of the evidence showed that decedent's job duties at the [International Paper] mill in Franklin, from a physical standpoint, were easier than most of the jobs he performed and that decedent worked in the same temperatures as those to which he was normally exposed. Therefore, the employment did not subject decedent to a greater risk or hazard than that to which he was normally exposed. . . . Decedent's working conditions did not involve unusual or extraordinary exertion or exces-

sive exposure to heat. The greater weight of the evidence also failed to show that the conditions of decedent's employment placed him at a greater risk of overheating than members of the general public not so employed. . . . Therefore, decedent's death, which occurred on April 1, 2004, was not the result of an injury by accident arising out of decedent's employment with defendant-employer.                                                    ·

The finding of fact supporting this conclusion stated that "decedent's death was not caused by extraordinary exertion or by exposure to a greater hazard or risk than that to which decedent was otherwise exposed and therefore did not arise out of his employment with defendant-employer."

As a general principle, "[w]hen an employee is conducting his work in the usual way and suffers a heart attack, the injury does not arise by accident and is not compensable." *Cody v. Snider Lumber Co.*, 328 N.C. 67, 71, 399 S.E.2d 104, 106 (1991). Nonetheless, "an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion or extreme conditions." *Id.* (emphasis omitted) (internal citations omitted). Plaintiff contends on appeal that the Commission applied the wrong test for determining whether Mr. Reaves' heart attack was due to extreme conditions.

In *Dillingham v. Yeargin Constr. Co.*, 320 N.C. 499, 358 S.E.2d 380 (1987), the Supreme Court held:

"[W]here the employment subjects a workman to a special or particular hazard from the elements, such as excessive heat or cold, likely to produce sunstroke or freezing, death or disability resulting from such cause usually comes within the purview of the compensation acts. . . . The test is whether the employment subjects the workman to a greater hazard or risk than that to which he otherwise would be exposed."

*Id.* at 503, 358 S.E.2d at 382 (emphasis added) (quoting *Fields v. Tompkins-Johnston Plumbing Co.*, 224 N.C. 841, 842-43, 32 S.E.2d 623, 624 (1945)). The test in *Dillingham* focuses on whether the hazardous conditions to which the employee was exposed are greater than those conditions encountered by the general public. *See id.* at 504, 358 S.E.2d at 382 ("It is clear that the type of heavy clothing required by his employment exposed plaintiff to a greater danger of overheating than that to which he otherwise would have been sub-

jected. *Members of the public not so employed* would not ordinarily wear heavy layers of clothing such as coveralls, boots, gloves, and a hood in an enclosed space with temperatures reaching 85 degrees." (emphasis added)); *Madison v. Int'l Paper Co.*, 165 N.C. App. 144, 154, 598 S.E.2d 196, 202 (2004) (concluding plaintiff's heart attack was compensable where plaintiff was exposed to greater temperatures than "members of the general public"). *See also* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 5.04[1] (2006) ("Sunstroke, heat prostration, freezing, pneumonia, and other effects of exposure to heat and cold arise out of the employment . . . if the exposure is accentuated by the nature and conditions of the employment, or, to use a familiar formula, if the exposure is greater than that to which the general public is subject.").

The Commission's finding of fact on this issue focused on whether Mr. Reaves was exposed "to a greater hazard or risk than that to which decedent was otherwise exposed." As the Commission's conclusion of law confirms, the Commission found dispositive the fact that this particular work assignment involved the "same temperatures as those to which [Mr. Reaves] was normally exposed." This reasoning is inconsistent with *Dillingham* since it does not focus on the correct comparison: Mr. Reaves' working conditions versus conditions to which the general public is exposed. As the leading workers' compensation commentator has noted, "[t]he proper application of the increased-risk test is exemplified by the following beautifully blunt statement in a Texas sunstroke case: 'In the case before us the very work which the deceased was doing for his employer exposed him to a greater hazard from heat stroke than the general public was exposed to for the simple reason that the general public were not pushing wheelbarrow loads of sand in the hot sun on that day.' " 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 5.04[2] (2006) (quoting *American Gen. Ins. Co. v. Webster*, 118 S.W.2d 1082, 1085-86 (Tex. Civ. App. 1938)).

Citing *Cody*, 328 N.C. at 71, 399 S.E.2d at 106, and *Dye v. Shippers Freight Lines*, 118 N.C. App. 280, 282, 454 S.E.2d 845, 847 (1995), defendants contend that the Commission nonetheless was required to consider whether Mr. Reaves' working conditions on the day he died were different than his regular work conditions. Defendants misread *Cody*. In *Cody*, 328 N.C. at 71, 399 S.E.2d at 106 (emphasis original) (internal citation omitted), the Supreme Court observed that a heart attack may be compensable if "due to *unusual or extraordinary exertion* or extreme conditions." "[U]nusual" and "extraordinary"

modify "exertion" and not "extreme conditions." *Cody* cannot reasonably be read to require a finding of unusually extreme conditions. Indeed, the Supreme Court, in reciting this test, referred back to its decision in *Dillingham*, which sets out the increased-risk test that the Commission should have applied. *Cody*, 328 N.C. at 71, 399 S.E.2d at 106.

Factually, neither *Cody* nor *Dye* is material to this case since each involved analysis of the "unusual exertion" prong of the test and not extreme conditions. *See Cody*, 328 N.C. at 71, 399 S.E.2d at 107 (concluding heart attack not compensable where plaintiff's "physical exertion" was not "precipitating cause of [his] heart attack"); *Dye*, 118 N.C. App. at 283, 454 S.E.2d at 848 (upholding denial of benefits based on lack of "credible evidence that plaintiff experienced any unusual or abnormal stresses in his work that contributed to his" heart attack). Nothing in *Cody* or *Dye* can be read as providing that an employee is not entitled to compensation if a heart attack resulted from extreme conditions that were a routine aspect of the employee's job. That outcome would, however, be the necessary result of defendants' argument.

We hold that the controlling test is the one set out in *Dillingham*. We note that the Commission did, in its conclusion of law, also state that "[t]he greater weight of the evidence . . . failed to show that the conditions of decedent's employment placed him at a greater risk of overheating than members of the general public not so employed." The Commission, however, made no findings of fact supporting this conclusion. Instead, the only findings arguably related to the extreme conditions issue were that although only a two-man crew was not normal operating procedure, it was adequate for that job; the men were used to the work hours and that type of work; the job was performed in temperatures cooler than temperatures under which Mr. Reaves normally worked; Mr. Reaves had not previously left a job site because of being hot; and "[t]he job performed at the [International Paper] mill that day was easier than most of the work decedent normally performed and the [International Paper] job was no hotter or more fatiguing than any of their other 12-hour jobs."

Thus, all of the Commission's findings on the issue of extreme conditions relate only to its conclusion that "[t]he greater weight of the evidence showed that decedent's job duties at the [International Paper] mill in Franklin, from a physical standpoint, were easier than most of the jobs he performed and that decedent worked in the same

temperatures as those to which he was normally exposed." We note that the Commission did report that plaintiff's expert witness as to industrial safety "was of the opinion that on April 1, 2004, decedent was subjected to a work hazard, namely, a hot and humid workspace, with poor ventilation." The Commission also reported the conflicting opinions of the medical experts as to whether the working conditions were excessively hot or humid. The Commission did not make findings resolving the issues suggested by this testimony except as to find generally "that decedent's death was not caused by extraordinary exertion or by exposure to a greater hazard or risk than that to which decedent was otherwise exposed."

In sum, the Commission's findings of fact and conclusions of law address whether Mr. Reaves was exposed to greater heat on the day of his death than he usually encountered during a normal day on the job, an issue immaterial to the test articulated in *Dillingham*. Where, as here, "the findings of the Commission are based on a misapprehension of the law, the case should be remanded so 'that the evidence [may] be considered in its true legal light.' " *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) (quoting *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939)).

### III

[3] Plaintiff additionally argues that the Commission erred in failing to make any determination regarding whether inadequate training was a significant contributing factor in Mr. Reaves' death. Plaintiff points to the testimony of Debra S. Meurs, the industrial safety expert, and plaintiff's expert witness, Dr. William Holt, as indicating that Mr. Templeman's lack of proper training in recognizing and reacting to work hazards resulted in an inadequate response to Mr. Reaves' complaints that ultimately contributed to his death.

The Commission made the following findings summarizing Ms. Meurs' expert opinion:

26. Ms. Meurs was of the opinion that on April 1, 2004, decedent was subjected to a work hazard, namely, a hot and humid workspace, with poor ventilation. According to Ms. Meurs, OSHA regulations required [IPS] to properly train decedent and Mr. Templeman in the recognition and response to the presence of work hazards, and no documentation exists that either decedent or Mr. Templeman had received such training.

27. Ms. Meurs believed that Mr. Templeman's response to decedent's complaint was inadequate, and that decedent should have been taken to a medical facility. Mr. Templeman's response, according to Ms. Meurs, is attributable to his lack of training, and his actions on April 1, 2004, contributed to decedent's death.

Although we note that Ms. Meurs was not competent to testify regarding medical causation,[1] she was competent to testify regarding industrial safety issues.

In addition to Ms. Meurs, Dr. Holt testified that in his medical opinion, the decision to take "Mr. Reaves to his work truck versus to an on-site medical facility" was a contributing factor in Mr. Reaves' death. The Commission made a finding reflecting part of Dr. Holt's medical opinion on this issue: "Dr. Holt believed that had decedent been taken to an EMT or other medical professional when he complained of feeling ill, decedent would have been properly examined and assessed and appropriate treatment provided, including using a defibrillator if decedent had suffered an arrhythmia."

Despite the findings acknowledging evidence regarding inadequate training and its role in Mr. Reaves' death, the Commission failed to make any ultimate findings as to whether IPS properly trained Mr. Templeman about how to identify and respond to work hazards or whether any lack of training led to an inadequate response that was a significant contributing factor in Mr. Reaves' death. " 'While the [Full] [C]ommission is not required to make findings as to each fact presented by the evidence, it is required to make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends.' " *Perry v. CKE Rests., Inc.*, 187 N.C. App. 759, 763, 654 S.E.2d 33, 35-36 (2007) (quoting *Gaines v. L.D. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977)). "If the Full Commission's findings of fact are insufficient to allow this Court to determine the parties' rights upon the matters in controversy, the proceeding must be remanded to the Full Commission for proper findings of fact." *Id.* at 654 S.E.2d at 36.

Defendants contend that the Commission did, in fact, address the issue, pointing to the Commission's finding of fact and conclusion of

---

1. *See Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) ("[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.").

law that Mr. Reaves' death was not "caused by the willful failure of defendant-employer to comply with any statutory requirement." It is, however, apparent from review of the opinion and award that this finding and conclusion was not intended to address the inadequate training issue, but rather related to plaintiff's claim pursuant to N.C. Gen. Stat. § 97-12 (2007), which provides: "When the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%)."

Because plaintiff asserted as part of her claim for compensation that the lack of training was a significant contributing factor in Mr. Reaves' death, the Commission was required to make findings of fact and conclusions of law resolving the issue presented. *See Vieregge*, 105 N.C. App. at 638, 414 S.E.2d at 774. On remand, therefore, the Commission must also make findings of fact and conclusions of law on this aspect of plaintiff's claim. Because we are remanding for further findings of fact and conclusions of law, we need not address plaintiff's remaining arguments.

Reversed and remanded.

Judges WYNN and CALABRIA concur.