The Court of Appeals, upon review of this matter, held in pertinent part:
 Our review of the record indicates that Mr. Cook's dependents have failed to present any evidence that Mr. Cook's death arose from an accident arising out of and in the course of his employment. The undisputed evidence before the Commission is that Mr. Cook was found dead in his hotel room after the end of a workday in which he had experienced chest pains and was observed laughing and joking with his co-workers on his way from the job site to the hotel. There is no evidence of record that Mr. Cook had been conducting his work in anything other than his usual manner before he died, or that his employment had subjected him to unusual exertion or extreme conditions of any kind. Moreover, the evidence tended to show that Mr. Cook, as a middle-aged, slightly overweight male and former smoker, possessed several widely accepted risk factors for ischemic heart disease.
 In sum, we hold that the Commission's conclusions that defendants have failed to present evidence sufficient to overcome the Pickrell presumption, and that Mr. Cook's death is compensable as an accident arising from and in the course of his employment, are unsupported by its findings of fact and by the record evidence. We reverse the Full *Page 2 
Commission's opinion and award and remand this matter for the Commission to make further findings of fact and conclusions of law consistent with this opinion.
Pursuant to the September 7, 2004 Opinion of the Court of Appeals in this case, the Full Commission VACATES its original Opinion and Award in this matter and enters the following Opinion and Award, as provided herein.
 APPEARANCES * * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on March 6, 2000 as:
 STIPULATIONS *Page 3 
1. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and employee on November 17, 1998, the day of decedent's death.
2. The carrier on the risk is CNA Insurance Company.
3. Decedent's average weekly wage would be sufficient to generate the maximum compensation rate.
4. The Pre-Trial Agreement dated March 1, 2000, was submitted by the parties and is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of November 19, 1998, decedent was fifty-three years old and was employed as a project supervisor for defendant electrical construction company. He had recently completed his assigned project and did not have a new job to start. Consequently, he was sent to Clayton to work on an existing project. Edward Hinton was the project supervisor for the Bayer project in Clayton. There were two buildings at the Bayer plant where wiring had to be installed. Mr. Hinton assigned the smaller building to plaintiff.
2. At the time in question, decedent lived in Manteo with his wife, Sylvia Cook. He left home early Monday morning, November 16, 1998, to drive to Clayton and reported for work that morning. The employees working on this project worked four ten-hour days per week, working from 7:00 a.m. to 5:30 p.m. After lunch that day, decedent told Mr. Hinton that he had experienced a sharp *Page 4 
Pain in his chest but that the pain had gone away. When Mr. Hinton suggested that he might want to see a doctor, he indicated that he would do so if the pain came back.
3. Decedent worked the remainder of that day. He called his wife from the hotel that night as usual. Although he told her that he was tired, he did not tell her about the episode of chest pain. On Tuesday November 17, 1998, he reported for work and performed his job duties at the plant. That afternoon he advised Mr. Hinton that he had had some problems with chest pain that morning, that it was not as bad as the previous day and that the last time he had had similar problems, which was several years before, it turned out to be acid reflux. He also indicated that he might see a doctor the next morning.
4. Mrs. Cook spoke with decedent on Tuesday morning when decedent called her and asked her to look for a per diem check from his employer when she went to get their mail. He also called her that afternoon and told her that he would call her again that night. In none of his communications with his wife that day did he tell her about having chest pain.
5. Decedent left work at 5:30 that afternoon and went to the motel where he was staying. He did not call his wife that night, so she began to call his room beginning at approximately 10:30, but she got no answer. At about 7:00 the next morning, she called Mr. Hinton at the job site and asked him to go to the motel and check on her husband. Mr. Hinton drove to Selma and asked a clerk at the motel to open decedent's room. When they went into the room, they found decedent lying face down on the floor outside of the bathroom fully clothed except for his boots. He was dead. The clerk called the police who subsequently arrived and who called Dr. Taylor, the Johnston County Medical Examiner. Since there was no evidence of trauma or violence, Dr. Taylor gave authorization for the body to be taken to the morgue at the local hospital. *Page 5 
6. Dr. Taylor examined decedent's body at approximately 10:00 that morning. In view of the history and the physical findings, he did not recommend or perform an autopsy. He concluded that decedent had died of ischemic heart disease the previous night. Either decedent had had a heart attack or he had developed ventricular arrhythmia from lack of oxygen to the heart muscle. Since either option was heart-related, there appeared to be no reason for an autopsy.
7. Mrs. Cook was notified of her husband's death that morning. She apparently did not request an independent autopsy although she was surprised at the diagnosis. She was unaware that decedent had had any heart related complaints. Nevertheless decedent was at risk for heart disease due to his gender, size, age and past smoking history, and he had complained of heart related symptoms during the previous two days.
8. There was no evidence offered of anything unusual or out of the ordinary in decedent's work activities on November 17, 1998. Nor was there evidence of any unusual exertion. Rather, decedent was walking around in his hotel room when he was stricken with coronary ischemia, which caused his death.
9. The undisputed evidence before the Commission is that decedent was found dead in his hotel room after the end of a workday in which he had experienced chest pains and was observed laughing and joking with his co-workers on his way from the job site to the hotel. There is no evidence of record that decedent had been conducting his work in anything other than his usual manner before he died, or that his employment had subjected him to unusual exertion or extreme conditions of any kind. Moreover, the evidence tends to show that decedent, as a middle-aged, slightly overweight male and former smoker, possessed several widely accepted risk factors for ischemic heart disease. Based on *Page 6 
the totality of the evidence, the Full Commission finds that although decedent died while in the course of his employment, his death was not the result of an accident arising out of his employment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. A traveling employee is within the course of his employment continuously throughout the travel unless there is a distinct departure on a personal errand. N.C. Gen. Stat. § 97-2 (6); Martin v. GeorgiaPacific Corp., 5 N.C. App. 37 (1969).
2. Although decedent, as a traveling employee, was within the course of his employment while staying in his hotel room, his death was not the result of an accident arising out of his employment. Rather, he died of ischemic heart disease that was unrelated to his job. N.C. Gen. Stat. § 97-2 (6); See Cody v. Snider Lumber Co., 328 N.C. 67 (1991).
3. "When an employee is conducting his work in the usual way and suffers a heart attack, the injury does not arise by accident and is not compensable. However, an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion, or extreme conditions." Madison v. Int'l Paper Co., 165 N.C. App. 144,598 S.E.2d 196 (2004) (internal quotations omitted). However, the decedent's dependents have failed to present any evidence that Mr. Cook's death arose from an accident arising out of and in the course of his employment. Id.
4. Defendants have overcome the Pickrell presumption by establishing that the cause of decedent's death was ischemic heart disease.Pickrell v. Motor Convoy, Inc., 322 N.C. 363 (1988). *Page 7 
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. This claim must be, and is hereby, DENIED.
2. Each side shall pay its own costs.
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________________ DIANNE C. SELLERS COMMISSIONER *Page 1