***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over this case.
2. All parties are subject to and bound by the Workers' Compensation Act. *Page 2 
3. On the date of the incident giving rise to this claim, an employer/employee relationship existed between the parties, and AIG Claim Services was the carrier on the risk.
4. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 — Industrial Commission Forms and
 b. Stipulated Exhibit #2 — Plaintiff's medical records
5. Additional documents admitted into evidence include the following:
 a. Plaintiff's Exhibit #1 — W-2 forms from 2003 and earnings report from defendant-employer for 2004;
 b. Plaintiff's Exhibit #2 — Dispatch records;
 c. Plaintiff's Exhibit #3 — Short-term disability application and chart of payments received and copies of disability checks;
 d. Defendants' Exhibit #1 — Medical note from Dr. Schulze from October 2004, with restrictions; and
 e. Defendants' Exhibit #3 — Medical note from Dr. Schulze from December 10, 2004.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty years old with a high school diploma and one year of college. He was a 1999 graduate of truck driving school and had worked as a driver off and on since then. His other jobs since graduation from high school involved heavy labor. *Page 3 
2. Plaintiff began working as a truck driver for defendant-employer on November 23, 2003. He drove a tractor-trailer delivering goods to various locations in the Carolinas, Virginia and Georgia.
3. For certain customers, plaintiff would have to physically assist in the unloading of products off the truck. Defendant-employer's dispatch logs specifically denoted "driver assists" for particular trips where a driver had to physically assist in the unloading of products. One of defendant-employer's primary customers while plaintiff was employed was American Tire Distributors (hereinafter "American Tire"). Any deliveries to American Tire that required the driver to assist in the unloading were denoted as "driver assists" in the dispatch logs.
4. According to Rick McClure, Dispatch Supervisor and Vice President of Operations for defendant-employer, the company delivered approximately two loads of tires per day to American Tire locations. Drivers did not load tires onto the trucks, but assisted in unloading them at the American Tire locations. The tires were loaded onto the trucks in a fashion known as lacing. The tires were laid down flat, side to side, with one tire laying flat and another tire laying one half over the top, at 45 degree angles, going back and forth until the truck was full. To physically unload the tires at an American Tire location, a driver would lift each individual tire and roll it out of the back end of the truck. The tire was received by an American Tire employee who would stack the individual tires on pallets for addition to the store inventory.
5. Robert Kirkpatrick, general manager of the American Tire location in Columbia, South Carolina for five years, is very familiar and knowledgeable about the size and approximate weights of the tires delivered to his facility. Tires ranging from passenger car tires, medium truck tires, over the road tractor trailer tires and lawn and garden tires are delivered to the Columbia facility. The weights of these tires vary between 20 pounds individually up to 150 *Page 4 
pounds individually. Lawn and garden tires typically weigh between 1-2 pounds. Approximately 70% of the tires delivered to his location are automobile tires, with 25% of the tires being truck and off road tires for heavy equipment, and the remaining 5% of the tires being lawn and garden tires.
6. On May 25, 2004, plaintiff drove a truck loaded with tires for delivery to the American Tire facility in Columbia, South Carolina. He arrived at the location at approximately 7:00 a.m. — 7:30 a.m. He began unloading each individual tire by physically lifting and rolling it off the end of the truck to an American Tire representative.
7. Plaintiff continued in this matter until approximately 9:30 a.m. when he allegedly encountered auto/truck tires which were "banded together in sets of two and three tires." Plaintiff testified at the hearing before the Deputy Commissioner that the tires were banded with a type of heavy plastic, with four bands around each set of tires. He testified that he encountered approximately 12 sets of two tires banded together and approximately 12 sets of three tires banded together. Plaintiff further testified at the hearing before the Deputy Commissioner that he unloaded all of the banded tires on the truck.
8. Plaintiff testified that after lifting and moving groups of banded tires, he felt exhausted and began having severe chest pains. An ambulance was called and plaintiff was taken to an emergency room in Columbia, South Carolina. He was ultimately diagnosed as having had a heart attack and spent several days hospitalized in Columbia, South Carolina.
9. At a pre-hearing deposition, plaintiff testified that on May 25, 2004, he had unloaded approximately three-quarters of the trailer when he encountered banded tires. Contrary to the testimony provided at the hearing before the Deputy Commissioner, plaintiff testified at his deposition that he encountered only two sets of two tires banded together and only one set of *Page 5 
three tires banded together. Plaintiff further testified that prior to encountering the alleged banded tires, he had begun to feel a little pain but when he had finished unloading the alleged set of three tires banded together the pain became much worse.
10. During his work for defendant-employer, plaintiff had never encountered banded tires before. Mr. Jerome Petteway, a fellow driver with defendant-employer, testified that he had never encountered banded tires when unloading his trailer at American Tire locations. Mr. McClure also testified that he had never heard of or observed banded tires delivered to American Tire. Mr. Kirkpatrick testified that the only time he had observed banded auto/truck tires being delivered to American Tire was by United Parcel Service to save money on freight charges. Mr. Kirkpatrick testified that he had never known of any banded auto/truck tires being delivered by defendant-employer.
11. The dispatch logs maintained by defendant-employer and used to calculate plaintiff's wages indicate that between November 26, 2003 and May 25, 2004, plaintiff had 22 "driver assist" assignments. It further appears that all of these "driver assist" assignments involved delivery of tires to American Tire locations. Despite what is clearly listed on the dispatch logs, plaintiff testified at the hearing before the Deputy Commissioner that he only participated in the manual unloading on two other occasions.
12. During his hospitalization in Columbia and following his release from the hospital, plaintiff came under the care of Dr. Robert Schulze, a cardiologist in Columbia. Dr. Schulze noted plaintiff's left anterior descending coronary artery was occluded and that was the cause of the heart attack. Dr. Schulze opined to a reasonable degree of medical certainty that the exertion of unloading several sets of banded tires was likely the cause of plaintiff's heart attack. However, Dr. Schulze acknowledged plaintiff had preexisting and almost total blockage of the *Page 6 
left anterior descending artery and the right coronary artery which developed long before the incident on May 25, 2004. He acknowledged that with such preexisting heart artery blockage, an individual could have a heart attack without any sort of outside inciting event such as unloading tires. He further acknowledged that plaintiff, given his preexisting heart condition, was going to have a heart attack at some time. On October 22, 2004, Dr. Schulze wrote a note stating that while plaintiff could not return to his occupation as a truck driver, he was capable of lifting but not more than 25 pounds. He also wrote a note on December 10, 2004, stating that plaintiff was "cleared from a cardiac standpoint to attend barber school."
13. Plaintiff's current treating cardiologist is Dr. Charles Harring. When asked his opinion on whether plaintiff's alleged lifting of banded tires caused or was a precipitating factor in the development of his heart attack, he stated he could not state with any degree of certainty that plaintiff's activities on that day were the cause of the heart attack. He stated on several occasions that while lifting tires was a factor in causing the heart attack, he simply did not know whether it was an actual cause of the heart attack. Dr. Harring then further testified that more likely than not that lifting the heavy objects played a part in the heart attack. He also stated that given plaintiff's preexisting heart condition prior to May 2004, he was a heart attack waiting to happen and it would not necessarily have required heavy exertion or lifting of tires to cause the heart attack he suffered. Any number of physical stressors could have caused the heart attack on that occasion.
14. Taking into consideration plaintiff's inconsistent testimony regarding the number of banded tires and the number of "driver assists" he performed while working with defendant-employer, as well as the testimony of other witnesses who could not corroborate plaintiff's *Page 7 
testimony and, in fact, contradicted plaintiff's testimony, the Full Commission finds plaintiff's testimony not credible.
15. By the greater weight of the evidence, the Full Commission finds that plaintiff did not encounter numerous sets of banded tires while unloading his trailer in Columbia on May 25, 2004. The Full Commission further finds that plaintiff had repeatedly assisted in unloading tires from in trailer in a similar manner as he did on May 25, 2004.
16. Since there is no credible testimony to support the allegation there were banded tires on plaintiff's truck on May 25, 2004, the specific testimony from Dr. Schulze and Dr. Harring establishing a causal relationship between such work activities and the heart attack is rejected.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. To be compensable under the Workers' Compensation Act, an injury must result from an accident arising out of and in the course of the employment. N.C. Gen. Stat. § 97-2(6). The claimant has the burden of proving each element of his claim. Pickrell v. Motor Convoy, Inc.,322 N.C. 363, 366, 368 S.E. 2d 582, 584 (1988). When an employee is conducting his work in the usual way and suffers a heart attack, the injury does not arise by accident and is not compensable. Cody v. SniderLumber Company, 328 N.C. 67, 71, 399 S.E. 2d 104, 106 (1991). However, an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion. Madison v. International PaperCompany, 165 N.C. App. 144, 152, 598 S.E. 2d 196, 201 (2004). *Page 8 
2. In the case at hand, plaintiff failed to carry his burden of proving the heart attack he suffered on May 25, 2004 was the result of an accident. The greater weight of evidence shows plaintiff was conducting his job as a driver in the usual and customary manner. There is no credible evidence or testimony to show that the heart attack was due to any unusual or extraordinary exertion. Since plaintiff has failed to show his heart attack was the result of an injury by accident arising out of his employment, his claim is not compensable and must be denied. Cody v.Snider Lumber Company, 328 N.C. 67, 399 S.E. 2d 104 (1991); Madison v.International Paper Company, 165 N.C. App. 144, 598 S.E. 2d 196
(2004).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for benefits under the North Carolina Workers' Compensation Act must be and is DENIED.
2. Each side shall pay their own costs.
This the 19th day of November, 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ PAMELA T. YOUNG CHAIR *Page 1