JACQUELYN B. REAVES, Widow of RONALD REAVES, Deceased Employee, Plaintiff
v. INDUSTRIAL PUMP SERVICE, Employer, AMERICAN INTERSTATE INSUR-
ANCE COMPANY, Carrier, Defendants

No. COA09-1561

(Filed 20 July 2010)

1. **Workers' Compensation— Pickrell presumption—work-relatedness of death unknown**

The Industrial Commission did not err in a workers' compensation case by applying the presumption in *Pickrell*, 322 N.C. 363, when the findings indicated that decedent, after being exposed to extreme heat in the course of his employment, was found dead in his work truck and there was an unknown cause of dysrhythmia which ultimately resulted in his death.

2. **Appeal and Error— mootness—alternative conclusion not reached**

Defendant's issue challenging the Industrial Commission's alternative conclusion in a workers' compensation case that decedent's death was caused by extreme working conditions was not reached based on the Court of Appeals' conclusion that the Commission properly applied the *Pickrell*, 322 N.C. 363, presumption. Further, plaintiff's cross-assignment of error was deemed moot.

Appeal by defendants and plaintiff from opinion and award filed 16 July 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 April 2010.

*Shipman & Wright, LLP, by Gary K. Shipman and William G. Wright, for plaintiff-appellee.*

*Cranfill Sumner & Hartzog LLP, by Nicole D. Viele and Meredith Taylor Berard, for defendants-appellants.*

REAVES v. INDUS. PUMP SERV.

[205 N.C. App. 417 (2010)]

BRYANT, Judge.

Industrial Pump Service, Employer, and American Interstate Insurance Company, Carrier, (collectively, defendants) and plaintiff, the widow of deceased employee Ronald Reaves (decedent), appeal from an opinion and award entered 16 July 2009 by the Industrial Commission. We affirm.

## Facts

On 1 April 2004, decedent, a welder, was found dead in his work truck which was parked outside the International Paper plant in Franklin, Virginia. Decedent and Robert Templeman, a machinist, had been repairing a pump in a basement room of the plant that day. The temperature in the basement room was in the mid-80s, and the room was humid and poorly ventilated. Decedent spent a total of eight to nine hours inside the room, 45 minutes of which he spent heating up a metal sleeve to 300 degrees with a welding torch and "tack welding," and about three hours doing other types of physical work.

Around 7:00 p.m. that day, decedent told Templeman that "he wasn't feeling good" and that he was going out into the hallway to sit down. Around 10:30 p.m., decedent again complained to Templeman that he was "hot and fatigued" and that the heat was "getting to him." Templeman and decedent walked out to the work truck at that time, and decedent got into the truck while Templeman went back inside the mill to finish his clean up. When Templeman returned to the truck about 45 minutes later, he found decedent lying in a reclined position, unresponsive. Medical staff confirmed his death. An autopsy was performed on 2 April 2004. The autopsy concluded that decedent had evidence of severe atherosclerotic cardiovascular disease and stated "Cause of death: Coronary artery disease." However, at no time prior to 1 April 2004 had decedent complained of heart problems or tightness in his chest, and a prior physical examination from January 2004 revealed that his blood pressure was 120/80, that his resting heart rate was 76 beats per minute, and that he had no history of cardiovascular disease.

## Procedural History

Plaintiff filed a workers' compensation claim for death benefits with the Industrial Commission on 22 September 2004, and on 22 September 2006, the deputy commissioner denied the claim. Plaintiff appealed to the Full Commission, and on 22 June 2007, the Full Commission affirmed the denial. Plaintiff appealed to this Court, and on 20 January 2009, this Court entered an opinion vacating the

Commission's opinion and award and remanding to the Commission, directing it to (I) make findings of fact and conclusions of law regarding the applicability of the *Pickrell* presumption; (II) consider the evidence under the correct legal standard to determine whether decedent's death was caused by extreme work conditions; and (III) make findings of fact and conclusions of law on whether inadequate safety measures of defendant employer Industrial Pump Service were a significant contributing factor in decedent's death. On 16 July 2009, the Full Commission entered an opinion and award concluding that the *Pickrell* presumption applied and that defendants did not rebut it, or, in the alternative, that decedent's death resulted from extreme work conditions, and that the lack of training in the recognition of health emergencies did not significantly contribute to decedent's death. Defendants and plaintiff appeal.

---

Defendants present two issues on appeal: whether the Commission erred in (I) applying the *Pickrell* presumption and concluding that defendants failed to rebut the *Pickrell* presumption; and (II) concluding alternatively that decedent's employment subjected him to extreme conditions. On cross-appeal, plaintiff alleges the Commission erred in (III) concluding that the lack of training in the recognition of health emergencies did not significantly contribute to decedent's death. As discussed below, we affirm the Commission's opinion and award.

### Standard of Review

Our review of the Commission's opinion and award is limited to determining " 'whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.' " *Madison v. Int'l Paper Co.*, 165 N.C. App. 144, 149, 598 S.E.2d 196, 200 (2004) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)). We must view " '[t]he evidence tending to support plaintiff's claim . . . in the light most favorable to plaintiff,' " granting plaintiff the " 'benefit of every reasonable inference to be drawn from the evidence.' " *Id.* at 149-50, 530 S.E.2d at 200 (quoting *Deese*, 352 N.C. at 115, 530 S.E.2d at 553). "In reviewing the Commission's findings of fact," we do not "weigh the evidence presented to the Commission or decide the case on the basis of the weight of the evidence." *Id.* at 150, 530 S.E.2d at 200 (citation omitted). "[T]he Commission is the 'sole judge of the weight and credibility of the evidence.' " *Id.* (quoting *Deese*, 352 N.C. at 116, 530 S.E.2d at 553).

*I*

**[1]** Defendants first contend that application of the *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 368 S.E.2d 582 (1988), presumption was inappropriate because the circumstances surrounding decedent's death were known and because there was "evidence before the Commission that decedent died other than by a compensable cause." We disagree.

A workers' compensation claimant has the burden of proving that the employee suffered an injury (1) by accident (2) arising out of employment (3) in the course of employment, *see* N.C. Gen. Stat. § 97-2(6) (2009); however, " '[w]hen an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death,' " courts should " 'indulge a presumption or inference that the death arose out of the employment.' " *See Pickrell*, 322 N.C. at 367, 368 S.E.2d at 584 (quoting 1 Larson, *The Law of Workmen's Compensation* § 10.32 (1985)). The presumption "may be used to help a claimant carry his burden of proving that death was caused by accident, or that it arose out of the decedent's employment, or both." *Id.* at 368, 368 S.E.2d at 585. The *Pickrell* presumption shifts the burden of proof to the defendant so that the "the defendant must come forward with some evidence that death occurred as a result of a non-compensable cause; otherwise, the claimant prevails." *Id.* at 371, 368 S.E.2d at 586. If the defendant introduces "evidence that death was not compensable, the presumption disappears" and the "Commission should find the facts based on all the evidence adduced, taking into account its credibility, and drawing such reasonable inferences from the credible evidence as may be permissible, the burden of persuasion remaining with the claimant." *Id.* Because an injury " 'shall not include a disease in any form, except where it results naturally and unavoidably from the accident,' " *Cody v. Snider Lumber Co.*, 328 N.C. 67, 70-71, 399 S.E.2d 104, 106 (1991) (quoting N.C.G.S. § 97-2(6)), "[w]hen an employee is conducting his work in the usual way and suffers a heart attack, the injury does not arise by accident and is not compensable." *Id.* at 71, 399 S.E.2d at 106 (citation omitted). "However, an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion . . . or extreme conditions." *Id.* (internal citations and emphasis omitted).

In the instant case, the Commission entered the following relevant findings of fact:

15. Decedent's principal job . . . was to "tack weld" a metal sleeve to the front face of the pump. Decedent used a welding torch to heat the sleeve to approximately 300 degrees . . . . Decedent spent a total of approximately 45 minutes heating up the sleeve and tack welding, approximately three hours [sic] of other physical work, and a total of eight to nine hours in the hot, humid and poorly ventilated basement room.

16. At approximately 7:00 p.m., decedent told Mr. Templeman that "he wasn't feeling good" and was going outside in a hallway to sit down. . . .

17. At approximately 10:30 p.m., decedent again complained that he was "hot and fatigued" and the heat was "getting to him." . . .

18. Mr. Templeman walked with decedent to their work truck . . . and decedent got into the truck while Mr. Templeman went back into the mill to finish his clean up. There were no witnesses as to what occurred during the 45 minutes decedent was alone in the truck.

. . . .

20. When Mr. Templeman went back to the truck, he found decedent lying in a reclined position. . . . The medical staff found decedent dead in the truck.

21. An autopsy . . . performed on April 2, 2004 . . . noted that: "The decedent was a 54 year old white man with no known significant past medical history apart from [sic] recent ear ache. While he was at work he complained of feeling hot. He was later found collapsed inside of a vehicle. At autopsy the decedent had evidence of severe atherosclerotic cardiovascular disease. . . . Cause of death: Coronary artery disease." . . .

. . . .

26. According to Dr. Holt, poor ventilation and heat increase the stress on the cardiovascular system, which can lower the blood pressure and create additional stressors on the heart.

27. The autopsy finding of "no thrombosis" was significant to Dr. Holt, as it meant that decedent did not have a "myocardial infarction, which is a heart attack in layman's terms." Dr. Holt was of the opinion that decedent had a rhythm problem in his heart due to a lack of blood supply to the heart muscle, which was aggra-

vated by the heat and other work conditions to which decedent was exposed on April 1, 2004.

. . . .

29. Dr. Holt stated that the work conditions to which decedent was exposed on April 1, 2004 were significant contributing factors in decedent's death. Although the autopsy and death certificate did not state that decedent had suffered a heat stroke or heat exhaustion, Dr. Holt assumed that decedent was overheated, dehydrated and had low blood pressure.

30. . . . It was [Dr. Davis'[1]] opinion that decedent's work conditions were not a significant contributing factor to decedent's death.

31. Dr. Davis testified that decedent died from a dysrhythmia followed by an arrhythmia, or heart attack. He acknowledged that heat can be a precipitating cause of a cardiac event, including a dysrhythmia. Dr. Davis also acknowledged that the pre-existing coronary artery disease would not, by itself, have caused decedent's death, but that there had to be a "malignant dysrhythmia."

. . . .

33. The Full Commission gives greater weight to the expert opinions of Dr. Holt and Ms. Meurs than to the causation opinion of Dr. Davis and holds that the greater weight of the evidence establishes that decedent's extreme work conditions were a contributing factor to his death. Although the evidence does not establish that decedent suffered from heat exhaustion or heat stroke, the greater weight of the evidence does show that decedent was exposed to heat, a special hazard, in the course of his employment and that the special hazard was a contributing factor to this death.

Although defendants assign error to many of the Commission's findings of fact, they only argue in brief that the opinions of plaintiff's expert, Dr. William Holt, as set out in findings 27 and 29, were speculative, and that finding 33 is outside the Commission's authority on remand. We deem as abandoned the assignments of error not addressed on appeal, N.C. R. App. P. 28(b)(6) (2009), and "treat the

---

1. Upon review of the record, we have determined that the Commission's finding of fact 30 intends to refer to Dr. Davis' expert opinion, and not Dr. Holt's. We have therefore omitted "Dr. Holt's" and inserted "Dr. Davis' " in its place.

unchallenged findings of fact as conclusive on appeal." *Wooten v. Newcon Transp., Inc.*, 178 N.C. App. 698, 701, 632 S.E.2d 525, 528 (2006) (citation omitted), *disc. review denied*, 361 N.C. 704, 655 S.E.2d 405 (2007).

The Commission's findings, which indicate that decedent, after being exposed to extreme heat in the course of his employment, was found dead in his work truck and that there was an unknown cause of the dysrhythmia which ultimately resulted in his death, support its conclusion that "the circumstances regarding the work-relatedness of decedent's death are unknown and that the death occurred as the result of an injury by accident sustained in the course of decedent's employment." Specifically, the Commission concluded that:

> 3. . . . [T]he greater weight of the evidence indicates that the circumstances regarding the work-relatedness of decedent's death are unknown and that the death occurred as the result of an injury by accident sustained in the course of decedent's employment. It is uncontested that plaintiff was in the course of his employment and was engaged in his employer's business at the time of death. The fact that the immediate medical cause of decedent's death is known does not indicate that the *Pickrell* presumption does not apply.
>
> . . .
>
> 4. Therefore, plaintiff is entitled to the *Pickrell* presumption that decedent's cause of death was an injury by accident arising out of the employment. . . .

As a result, we hold that the Commission did not err by applying the *Pickrell* presumption. *See Pickrell*, 322 N.C. at 364-70, 368 S.E.2d at 583-86.

Defendants also contend, relying on this Court's holding in *Gilbert v. Entenmann's, Inc.*, 113 N.C. App. 619, 440 S.E.2d 115 (1994), that the *Pickrell* presumption was inappropriate because the testimony of their expert witness, Dr. Arthur Davis, that work conditions did not significantly contribute to decedent's death, was "evidence before the Commission that decedent died other than by a compensable cause." In *Gilbert*, we held that a plaintiff is not entitled to the *Pickrell* presumption when a decedent has died from "a noncompensable cause that is deadly in and of itself without a precipitating event." *Reaves v. Indus. Pump Serv.*, 195 N.C. App. 31, 37, 671 S.E.2d 14, 19 (2009) (citing *Gilbert*, 113 N.C. App. at 623, 440 S.E.2d

at 118). However, " 'an injury caused by a heart attack may be compensable if the heart attack is due to an accident, such as when the heart attack is due to unusual or extraordinary exertion or extreme conditions.' " *Wooten,* 178 N.C. App. at 702, 632 S.E.2d at 528 (quoting *Cody,* 328 N.C. at 71, 399 S.E.2d at 106) (emphasis omitted). In addition, although Dr. Davis opined that "work conditions were not a significant contributing factor to decedent's death," Dr. Davis also opined that "pre-existing coronary artery disease would not, by itself, have caused decedent's death," that "decedent died from a dysrhythmia," and that exposure to heat can cause dysrhythmia. Further, it was Dr. Holt's opinion "that the work conditions to which decedent was exposed on April 1, 2004 were significant contributing factors in decedent's death." We therefore overrule defendants' assignment of error on this point.

Defendants next contend that, "even if *Pickrell* were applicable," they rebutted it with Dr. Davis' causation testimony. We disagree.

A defendant may rebut the *Pickrell* presumption by "com[ing] forward with some evidence that death occurred as a result of a non-compensable cause; otherwise, the claimant prevails." *Pickrell,* 322 N.C. at 371, 368 S.E.2d at 586. Our review of the Commission's findings regarding whether defendants have rebutted the *Pickrell* presumption is limited to determining whether "any competent evidence in the record . . . support[s] the findings of the Commission[.]" *Horton v. Powell Plumbing & Heating of N.C., Inc.,* 135 N.C. App. 211, 216, 519 S.E.2d 550, 553 (1999) (citation omitted). If competent evidence supports the Commission's findings, "we are bound by [the Commission's] determination." *Id.* (citation omitted). Furthermore, "[c]ontradictions in . . . testimony go to its weight, and the Commission may properly refuse to believe particular evidence." *Harrell v. J. P. Stevens & Co.,* 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied,* 300 N.C. 196, 269 S.E.2d 623 (1980).

The Commission's findings that Dr. Davis "acknowledged that heat can be a precipitating cause of a cardiac event" and that Dr. Davis "also acknowledged that the pre-existing coronary artery disease would not, by itself, have caused decedent's death, but that there had to be a 'malignant dysrhythmia' " support the Commission's conclusion that "an unknown precipitating cause for the dysrhythmia . . . resulted in decedent's death[,]" "[d]ecedent's pre-existing coronary artery disease did not by itself cause decedent's death[,]" and "defendants have not successfully rebutted the presumption by coming

forward with sufficient, credible evidence that death occurred as a result of a non-compensable cause." Because our review is limited to determining whether any competent evidence supports the Commission's findings, and whether those findings support the Commission's conclusions, *see Madison*, 165 N.C. App. at 149, 598 S.E.2d at 200, we hold that the Commission did not err by concluding that defendants failed to rebut the *Pickrell* presumption.

Furthermore, although defendants challenge findings 27 and 29 by arguing that the opinions of plaintiff's expert witness, Dr. Holt, were speculative and were therefore an improper basis for the Commission's conclusions regarding the *Pickrell* presumption, we disagree. To the extent Dr. Holt's opinion—derived from his review of the autopsy report, decedent's medical records, and various reports of the incident—served as a basis for the Commission's findings and conclusions regarding the *Pickrell* presumption, we believe it was sufficient "to take the case out of the realm of conjecture and remote possibility[.]" *Id.* at 150-51, 598 S.E.2d at 200. We are also unpersuaded by defendants' argument that finding 33 was outside the scope of the Commission's authority on remand because we believe the Commission "strictly follow[ed] this Court's mandate without variation," *see Crump v. Independence Nissan*, 112 N.C. App. 587, 590, 436 S.E.2d 589, 592 (1993), by making findings and conclusions addressing the *Pickrell* presumption.

## II & III

[2] Because we affirm the Commission's award of death benefits on the ground that the Commission properly applied the *Pickrell* presumption, we do not reach defendants' second issue challenging the Commission's alternative conclusion that decedent's death was caused by extreme work conditions. By affirming the Commission's opinion and award, we also hold that plaintiff's cross-assignment of error is moot. *See Roset-Eredia v. F.W. Dellinger, Inc.*, 190 N.C. App. 520, 531, 660 S.E.2d 592, 600 (2008) (deeming plaintiff's cross-assignments of error moot after affirming the Commission's award).

Affirmed.

Judges ELMORE and ERVIN concur.